SOUTH WINDSOR CEMETERY ASSOCIATION, INC. *v.*
RICHARD R. LINDQUIST
(AC 29927)

Flynn, C. J., and Gruendel and Stoughton, Js.

Argued February 2—officially released May 26, 2009

*Richard R. Lindquist,* pro se, the appellant (defendant).

*Suzanne E. Caron,* for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. This case involves a dispute over a right-of-way. The pro se defendant, Richard R. Lindquist, appeals from the judgment of the trial court in favor of the plaintiff, South Windsor Cemetery Association, Inc., on both the plaintiff's complaint and on his counterclaim. On appeal, the defendant claims that (1) the court improperly granted the plaintiff's motion to strike four counts of his seven count counterclaim and (2) he was deprived of due process of law.[1] We affirm in part and reverse in part the judgment of the trial court.

The court found the following relevant facts.[2] "Center Cemetery is an ancient burying ground in the old historic section of South Windsor, nestled between the

[1] The defendant also claims on appeal that "[t]he trial court erred by not granting [the] defendant [a] declaratory judgment . . . ." In resolving this claim, we simply point out that the defendant's counterclaim did not request a declaratory judgment but only injunctive relief and damages. We do note that the stricken count four of the counterclaim might be construed to request a declaratory judgment, but the defendant on appeal does not challenge the order striking that count, and its subject matter is unrelated to his claim on appeal. See footnote 3. Because the defendant never sought a declaratory judgment at trial, he cannot raise this claim for the first time on appeal. See *Traggis* v. *Shawmut Bank of Connecticut, N.A.,* 72 Conn. App. 251, 264, 805 A.2d 105 ("we ordinarily will not review an issue that has not been properly raised before the trial court" [internal quotation marks omitted]), cert. denied, 262 Conn. 903, 810 A.2d 270 (2002).

[2] The defendant sets forth most of the facts and procedural history relevant to his appeal in the appendix to his brief. Because the facts and procedural history also may be gleaned from the court's memorandum of decision and the plaintiff's brief, and because it is our policy to be mindful of the fact that pro se parties may not be as well equipped to comply with the rules of procedure as members of the bar, we do not find it necessary to take any action with regard to the defendant's appendix. We remind litigants, however, that it is impermissible to utilize the appendix of a brief to elude the thirty-five page limitation for briefs set forth in Practice Book § 67-3 or to avoid including required statements in the appellate brief under Practice Book §§ 67-4 and 67-5. See *Papic* v. *Burke,* 113 Conn. App. 198, 217 n.11,

Connecticut River on the west and Main Street on the east. . . . The newer, northern end [of the cemetery] is owned by the [plaintiff]. The [plaintiff] is responsible for the care and maintenance of burial plots in the cemetery. . . . To get to [portions of the cemetery], visitors must cross lots fronting on Main Street . . . . Among the landowners on Main Street blocking in the cemetery are the First Congregational Church of South Windsor and [the defendant].

"The [plaintiff] uses three driveways for visitor ingress [and] egress. The first . . . is actually a driveway belonging to the First Congregational Church . . . . The [plaintiff] is allowed to use that driveway, but permission is not in writing, and it is at the pleasure of the church. At times, particularly when the church is running a fair, that driveway is not available to the [plaintiff]. The second driveway . . . is owned by [the town of South Windsor] . . . . Due to the awkward circumstance involving the first two driveways, and to acquire a more direct [route], and [a legal] right of access to its section of the cemetery, the [plaintiff], in 1963, purchased a twelve foot right-of-way over a driveway . . . on land [then] owned by Elizabeth Parker. . . . That driveway thus provides the third access to the cemetery [and is] the one that is at issue in [this] case."

Parker's property containing the right-of-way was conveyed several times during the fifteen years after the plaintiff purchased the right-of-way, and, in 1978, the defendant acquired the parcel subject to the plaintiff's right-of-way. The defendant is therefore "the successor in title to the Parker lot, and he uses the same driveway

---

965 A.2d 633 (2009). "Although we are solicitous of the fact that the defendant is a pro se litigant, the statutes and rules of practice cannot be ignored completely." (Internal quotation marks omitted.) *Cooke* v. *Cooke*, 99 Conn. App. 347, 352, 913 A.2d 480 (2007).

to access his land and home, sharing it with the [plaintiff]. . . .

"The [plaintiff] and [the defendant] coexisted relatively peacefully at first. . . . [But] [f]riction developed over the years, particularly over vegetation. The [defendant's] lot is almost completely overgrown with vegetation . . . which grew into the driveway. [The defendant's wife] once complained to the [plaintiff] that she almost was hit by a car while tending her flowers in the driveway. The [plaintiff] told her that she should not grow flowers in the driveway. A compromise was reached, and the [plaintiff] put up a sign restricting the speed limit in the right-of-way to five miles per hour. Further friction developed over the encroaching jungle of vines and plants, which were scratching cars as they entered the cemetery, and as potholes . . . developed in the driveway. The potholes and vines were inconvenient obstacles at best and caused rerouting of cemetery traffic on occasion to avoid damage. A truck got stuck in a hole once. . . .

"After [the defendant's wife died] in 2003, the potholes and vegetation were getting out of control. Hearses were occasionally forced to use the other entrance for fear of getting stuck. [Representatives of the plaintiff] attempted to communicate with the [defendant], but they were unable to reach any accord. Face to face discussions were treacherous. When a [representative of the plaintiff] dumped a pail of gravel in one pothole, [the defendant's] son came out of the house and said that his father did not want the right-of-way touched . . . . In . . . written correspondence . . . it was made clear that [the defendant] would resist any efforts to fix the right-of-way. When [representatives of the plaintiff] attempted to cut back the encroaching vegetation, [the defendant] called the police. . . .

"The crux of the dispute is that [the defendant's] primary operating entrance and exit door from his

house is . . . near the driveway. [The defendant] is very concerned about cemetery traffic in the driveway and his personal safety when entering and exiting his house from that door. . . . [The door] did not exist when Parker granted the right-of-way in 1963, but was there when [the defendant] bought the house in 1978.

"[The defendant] experiences severe anxiety from the fact that the door is so near the right-of-way. When he hears a car pass, he is concerned about speeding and his physical safety, and he experiences painful anxiety. He does not want the potholes in the right-of-way fixed because he believes they serve as speed control devices to slow the traffic. . . . There is very little traffic associated with this ancient cemetery, and those that use it are not in a hurry. There have never been any reports or complaints about speeding cars in the driveway made to the [plaintiff], even from [the defendant's wife]."

The plaintiff filed an action against the defendant, seeking (1) a declaratory judgment that the plaintiff's right-of-way is enforceable and that the plaintiff may maintain the right-of-way to ensure that traffic may pass and (2) a permanent injunction preventing the defendant from interfering with the plaintiff's maintenance of the right-of-way. The defendant filed a seven count counterclaim, seeking, inter alia, injunctive relief and damages. The plaintiff moved to strike the defendant's counterclaim, which the court granted as to counts two, five, six and seven because it determined that those counts did not arise out of the same transaction as that giving rise to the plaintiff's complaint.[3] See Practice Book § 10-10. The two surviving counts of the

---

[3] The court also struck count four of the counterclaim, but for a different reason—that it properly should be pleaded as a special defense. The defendant repleaded the count as a special defense and does not contest the court's ruling as to that count on appeal.

counterclaim sought (1) a permanent injunction preventing the plaintiff from removing the potholes in the right-of-way and (2) a permanent injunction preventing the plaintiff from obstructing the defendant's use of the driveway. The remaining claims of both parties were tried to the court, which ruled in favor of the plaintiff on both its complaint and on the defendant's counterclaim. This appeal followed.

## I

## MOTION TO STRIKE

We first address the defendant's claim that the court improperly granted the plaintiff's motion to strike counts two, five, six and seven of his counterclaim. In striking those counts, the court ruled that they did not arise from the same transaction as that giving rise to the plaintiff's complaint. The defendant asserts that the allegations contained in the counterclaim are indeed grounded in the same transaction as the plaintiff's complaint.

"Practice Book § 10-10 provides that '[i]n any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint . . . .' This section is a common-sense rule designed to permit the joinder of closely related claims where such joinder is in the best interests of judicial economy. . . . The transaction test is one of practicality, and the trial court's determination as to whether that test has been met ought not be disturbed except for an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *JP Morgan Chase Bank, Trustee* v. *Rodrigues*, 109 Conn. App. 125, 131–32, 952 A.2d 56 (2008).

## A

The subject of the plaintiff's complaint is the status of the right-of-way and the plaintiff's right to make use of and to repair that right-of-way without interference from the defendant. On the other hand, the counts stricken from the defendant's counterclaim (with the exception of the second count, which will be addressed separately) do not address the status of the right-of-way. Count five seeks damages for negligent and intentional infliction of emotional distress for the plaintiff's attempt to repair the potholes, count six seeks damages for endangering the defendant's physical health and count seven seeks damages for endangering the defendant's mental health.

Our Supreme Court has instructed that the "[r]elevant considerations in determining whether the 'transaction test' has been met include whether the same issues of fact and law are presented by the complaint and the [counter]claim and whether separate trials on each of the respective claims would involve a substantial duplication of effort by the parties and the courts." *Jackson* v. *Conland*, 171 Conn. 161, 166–67, 368 A.2d 3 (1976). The disposition of the plaintiff's complaint necessarily requires an analysis of the scope of the conveyance from Parker to the plaintiff and the parties' rights relating to the real property comprising the right-of-way. See *Posick* v. *Mark IV Construction Co.*, 109 Conn. App. 777, 781, 952 A.2d 1271 (2008). Conversely, the disposition of the counts stricken from the counterclaim would require a fact intensive investigation into personal interactions between the defendant and the representatives of the plaintiff, which occurred after the purchase of the right-of-way and allegedly resulted in physical and emotional distress to the defendant. Those allegations relate to the behavior of the plaintiff and do not pertain to the specific subject of the plaintiff's complaint. See

*JP Morgan Chase Bank, Trustee* v. *Rodrigues*, supra, 109 Conn. App. 132.

The issue presented by the present case is similar to that in *JP Morgan Chase Bank, Trustee.* In that case, the plaintiff filed a complaint seeking the foreclosure of a mortgage. The defendants filed a counterclaim, asserting, inter alia, a claim for intentional infliction of emotional distress due to the plaintiff's failure to comply with the terms of an agreement allegedly requiring the plaintiff to forbear from collection of the debt and foreclosure of the mortgage. The plaintiff filed a motion to strike the defendants' counterclaim, which the trial court granted. Id., 127–28.

On appeal, this court held that the trial court did not abuse its discretion in striking the defendants' counterclaim. The opinion focused on the fact that the transaction giving rise to the complaint was the execution of a document transferring an interest in land (namely, a mortgage), whereas the counterclaim "related to the conduct of the plaintiff that occurred after the execution of the mortgage note and with respect to documents other than the mortgage note." Id., 133. Likewise, in the present case, the transaction underlying the complaint involves the transfer of an interest in land, while the transactions underlying the stricken counts of the counterclaim involve interactions between the plaintiff and the defendant that occurred well after the transfer took place.

Therefore, the court did not abuse its discretion in finding that the stricken counts involved issues of fact and law different from those in the complaint and that bringing the counterclaim as a separate action would not "involve a substantial duplication of effort by the parties and the courts." *Jackson* v. *Conland*, supra, 171 Conn. 167. We conclude that the court did not abuse

its discretion in striking counts five, six and seven of the defendant's counterclaim.

## B

Count two of the counterclaim is different from the other stricken counts. It seeks a permanent injunction preventing the plaintiff from obstructing the defendant's use of the driveway comprising the right-of-way for medical assistance and medical supply deliveries. At first blush, this count appears very similar to count three, which seeks a permanent injunction preventing the plaintiff from *generally* obstructing the defendant's use of the driveway. In its decision on the plaintiff's motion to strike, the court ruled that count three of the counterclaim *did* arise from the same transaction as the plaintiff's complaint but that count two did not. We fail to see the logic or the law that led to different conclusions on the two counts.

Count two involves the defendant's right to use the property that is the subject of the plaintiff's right-of-way. The claim, therefore, arises from the same transaction as the plaintiff's complaint—namely, Parker's conveyance of the right-of-way to the defendant. It appears that resolution of the same issues of fact and law— namely, the plaintiff's interest in and right to use the driveway—would be required in the disposition of the complaint and the surviving counts of the counterclaim as would be required to adjudicate count two of the counterclaim. It would follow, therefore, that bringing count two as a separate action would involve a substantial duplication of effort by the parties and the courts. See id. Particularly in light of the fact that the court determined count three arose out of the same transaction as the complaint but count two did not, we conclude that the court abused its discretion in striking count two.

## II

## PROCEDURAL CLAIMS

We next address the defendant's claim that he was deprived of due process of law.[4] Specifically, he asserts that the court (1) deprived him of his right to a fair trial by permitting undisclosed witnesses to testify and undisclosed evidence to be admitted and (2) violated his rights to due process by declining to dismiss the plaintiff's complaint due to its failure to comply with Practice Book § 17-56 (b). We address each in turn.

### A

On July 15, 2006, the defendant served a set of interrogatories on the plaintiff. The eighth question in that set requested that the plaintiff "[i]dentify individuals, testimony, affidavits and/or documents [that the plaintiff will use] in part or full, to substantiate its prayer for redress . . . ." In its response served upon the defendant on September 22, 2006, the plaintiff stated that its answer to question eight would "be supplied when required pursuant to the provisions of the Connecticut Rules of Court." The defendant did not seek an order requiring compliance pursuant to Practice Book § 13-14 at that time, and he did not otherwise move to compel the plaintiff to answer question eight or to disclose the witnesses and exhibits it intended to utilize at trial.[5]

On the morning of the first day of trial, October 1, 2007, both parties disclosed their witness and exhibit

---

[4] The defendant also claims that he was denied equal protection of the laws. He does not allege, however, any specific instance of discrimination. Cf. *Fillion* v. *Hannon*, 106 Conn. App. 745, 756, 943 A.2d 528 (2008) (equal protection claims involve discrimination at hands of government). We decline to review the equal protection claim because it was inadequately briefed. See *Lederle* v. *Spivey*, 113 Conn. App. 177, 192, 965 A.2d 621, cert. denied, 291 Conn. 916, 970 A.2d 728 (2009).

[5] We note that the defendant did file a motion to compel the plaintiff to respond to the interrogatories generally, but that motion was filed as the result of a delay in the mail and was unrelated to the issue on appeal.

lists to each other and to the court for the first time. On the same day, the defendant filed a motion with the court entitled "Motion to Exclude All Plaintiff's Witnesses and Exhibits from Trial Not Disclosed." In that motion, the defendant argued that because none of the plaintiff's witnesses or exhibits were disclosed prior to trial as requested in the interrogatories, permitting them to testify would work an unfair surprise on the defendant and deprive him of due process of law. After a brief oral argument on the motion, the court denied the defendant's motion, and the trial proceeded. On appeal, the defendant claims that the court's failure to grant his motion to exclude deprived him of due process of law.[6]

"[A] court may, either under its inherent power to impose sanctions in order to compel observance of its rules and orders, or under the provisions of [Practice Book] § 13-14, impose sanctions"; *Millbrook Owners Assn., Inc.* v. *Hamilton Standard,* 257 Conn. 1, 14, 776 A.2d 1115 (2001); including "[t]he entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence . . . ." Practice Book § 13-14 (b) (4). We review the court's decision regarding such orders under the abuse of discretion standard: "The court's decision on whether to impose the sanction of excluding . . . testimony . . . is not to be disturbed unless it abused its legal discretion, and [i]n determining this the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in

---

[6] To resolve the defendant's claim, we do not find it necessary to determine if it is indeed of a constitutional nature. We note that calling an alleged evidentiary or discovery error a due process violation does not transform it into a claim of constitutional magnitude. See *State* v. *Taylor,* 239 Conn. 481, 502–503, 687 A.2d 489 (1996) (" 'it would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party' "), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997).

favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Wyszomierski* v. *Siracusa*, 290 Conn. 225, 233, 963 A.2d 943 (2009); see *Wallbeoff* v. *Wallbeoff*, 113 Conn. App. 107, 113–14, 965 A.2d 571 (2009).

In light of the deference given to the court's ruling, we conclude that the court did not abuse its broad discretion in refusing to grant the defendant's motion to exclude the plaintiff's witnesses from testifying. This is true particularly in light of the fact that the defendant did not notify the court or the plaintiff of the insufficiency of the plaintiff's answer to the interrogatories for more than one year after the answers were submitted. Similarly, the defendant filed his motion to exclude at the eleventh hour—on the morning of trial—at which point it was already too late for the plaintiff to respond adequately to the interrogatory with sufficient time for the parties to utilize the response in preparation for trial.[7] Thus, the defendant's excessive delay in asserting his alleged right to a list of the plaintiff's witnesses and exhibits further bolsters the court's decision not to grant the defendant's motion, and we will not disturb that decision on appeal.

B

We next address the defendant's claim regarding the plaintiff's failure to comply with the provisions of Practice Book § 17-56 (b). Section 17-56 (b) provides in

---

[7] The defendant asserted at oral argument that, on the basis of the plaintiff's response to question eight, he reasonably believed that the plaintiff would not be calling any witnesses or introducing any evidence at trial. He claims that it was because of that belief that he did not file a motion regarding the response to the interrogatory prior to the first day of trial. We believe this claim to be disingenuous, as the record indicates that the defendant arrived at the courthouse on the first day of trial with the motion to exclude evidence already prepared, despite a supposed belief that the plaintiff would not be submitting any evidence.

relevant part: "All persons who have an interest in the subject matter of the requested declaratory judgment that is direct, immediate and adverse to the interest of one or more of the plaintiffs or defendants in the action shall be made parties to the action or shall be given reasonable notice thereof. . . ." The defendant claims that third parties, namely, Michael Paul and June Paul or their successors, have an interest in the right-of-way at issue. He argues that the court lacked subject matter jurisdiction over the claim because the Pauls were not made parties to the action, nor were they notified of the pendency of the action as required by § 17-56 (b). He also asserts that the failure to join the Pauls as parties to the action deprived him of due process of law.

To the extent that the defendant claims that the failure to comply with the provisions of § 17-56 (b) implicates the court's subject matter jurisdiction, we note simply that our Supreme Court has held that "the failure to notify interested persons in a declaratory judgment action does not implicate the court's subject matter jurisdiction." *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 289, 914 A.2d 996 (2007). To the extent that the defendant contends that his due process rights were violated by the court's failure to dismiss the case, we note that with limited exceptions not applicable here, "no declaratory judgment action shall be defeated by the nonjoinder of parties or the failure to give notice to interested persons. The exclusive remedy for nonjoinder or failure to give notice to interested persons is by motion to strike . . . ." Practice Book § 17-56 (c). The defendant did not file a motion to strike, and, therefore, we determine that his due process claim is not preserved properly for appeal. See *Hall* v. *Kasper Associates, Inc.*, 81 Conn. App. 808, 813 n.2, 846 A.2d 228 (2004) (defendant waived claim of misjoinder by failing to file motion to strike). As such, we need not determine whether his rights were

violated absent a request for review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine under Practice Book § 60-5. As our courts often have stated, "[w]here a defendant fails to seek review of an unpreserved claim under either *Golding* or the plain error doctrine, this court will not examine such a claim." (Internal quotation marks omitted.) *State* v. *Parham*, 70 Conn. App. 223, 231 n.9, 797 A.2d 599 (2002); see also *Johnson* v. *Commissioner of Correction*, 288 Conn. 53, 60, 951 A.2d 520 (2008).

The judgment is reversed with respect to the striking of count two of the defendant's counterclaim and the case is remanded for further proceedings on that count consistent with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.