******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CITIMORTGAGE, INC. *v.* MIGDALIA REY
(AC 35539)

Lavine, Sheldon and Bishop, Js.

*Argued February 20—officially released June 3, 2014*

(Appeal from Superior Court, judicial district of New Haven, Maronich, J.)

*Renata Strause* and *Christian Mott*, law student interns, with whom were *J. L. Pottenger, Jr.*, *Jeffrey Gentes*, and, on the brief, *Nathan J. Robinson* and *Lev Menand*, law student interns, for the appellant

(defendant).

*Donald E. Frechette*, with whom was *Tara L. Trifon*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. This appeal calls upon the court to decide whether, in a residential foreclosure action in which the parties have participated in court-sponsored forbearance mediation and in which a final forbearance agreement has been reported to the court, a defendant may counterclaim for damages allegedly caused by the plaintiff's subsequent pursuit of the foreclosure complaint in an alleged breach of the forbearance agreement. Because, in the particular factual and procedural circumstances of this case, we answer that question in the affirmative, we reverse the judgment of the trial court.

In this residential foreclosure action, the defendant, Migdalia Rey, appeals from the judgment rendered against her on the basis of her claim that the trial court incorrectly struck all counts of her counterclaim because, in the court's view, it did not relate to the making, validity or enforcement of the mortgage or note on which this foreclosure action is based.

The following procedural overview and undisputed factual underlayment set the context for our analysis. By complaint dated June 2, 2008, the plaintiff, CitiMortgage, Inc., as a mortgage assignee and holder of the associated promissory note, sought to foreclose on a residential home mortgage secured by property owned by the defendant on the basis of its claim that she was in default on the promissory note she had executed in favor of the original mortgagee, The Connecticut National Bank. In response, the defendant appeared and filed a petition to participate in the court's foreclosure mediation process, and in conjunction with that petition, made application, pursuant to General Statutes § 49-31f, for protection and a stay of the foreclosure action. Pursuant to these requests by the defendant, the matter was referred to the court-sponsored foreclosure mediation program for possible resolution.[1] On November 24, 2008, the court's foreclosure mediator, Karen Zarkades, filed a document captioned, "Mediator's Final Report" with the court, which indicated that the matter had been settled. As to disposition, the report indicated that the action was to be withdrawn "within 90 days, or dismissed by the Court after successful completion of three (3) payments under the parties' Forbearance Plan." On November 7, 2008, before the filing of this report by Zarkades, the parties had executed a document captioned, "Stipulated Special Forbearance Agreement," which contained several recitals dealing, inter alia, with the parties' anticipation that the foreclosure action would be put on hold pending the defendant's fulfillment of the obligations undertaken pursuant to the stipulation, the total amount of the debt, the three monthly payments to be made by the defendant, and a provision requiring the defendant to either pay the loan in full or resubmit updated financial

information to the plaintiff by February 1, 2009, for a review of further loss mitigation options. The defendant made the three monthly payments as required by the stipulation and thereafter recommenced making monthly payments in the amount required by the underlying promissory note.[2]

Notwithstanding the filing of this mediation report and for reasons not readily apparent from a review of the record, the plaintiff sought to continue with the foreclosure litigation by reclaiming its motion for a judgment of strict foreclosure on October 26, 2009, and again on December 14, 2009. The defendant, in turn, filed her answer, three special defenses, and a five count counterclaim on March 12, 2010. Generally, in her answer, the defendant asserted that she was not in default on the note on the basis of her claim that she had complied fully with the terms of the parties' forbearance agreement. By way of special defense, the defendant alleged that: (1) she had made payments pursuant to the terms of the parties' forbearance agreement and that, by accepting those payments, the plaintiff had waived its rights to declare her in default on the note and to foreclose in the mortgage; (2) by pursuing the defendant in contravention to the terms of the forbearance agreement the plaintiff was acting with unclean hands and thus was not entitled to the equitable remedy of foreclosure; and (3) the plaintiff's pursuit of the remedy of foreclosure constituted a breach of its duty of acting in good faith and fair dealing. By way of a counterclaim, the defendant alleged that the plaintiff's pursuit of the remedy of foreclosure in contravention of the terms of the parties' forbearance agreement: (1) constituted a breach of contract; (2) was negligent; (3) negligently inflicted emotional distress on her; (4) constituted a breach of its duty of good faith and fair dealing; and (5) was a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

On January 25, 2011, the plaintiff moved for summary judgment on liability. In support of its motion, the plaintiff attached an affidavit, which set forth the details of the parties' forbearance agreement and contained allegations regarding the manner in which the defendant purportedly had not fully complied with its terms. In short, the plaintiff argued in its motion for summary judgment that it was entitled to a judgment on liability not only on the basis of the original note and mortgage, but also on the basis of the defendant's alleged failure to fulfill her duties under the forbearance agreement.[3]

Thereafter, on April 23, 2012, the plaintiff withdrew its foreclosure complaint.[4] Subsequently, on October 25, 2012, the plaintiff moved to strike the defendant's counterclaim as legally insufficient. Specifically, the plaintiff argued, inter alia, that: (1) the defendant's counterclaim should be stricken because it did not

relate to the making, validity or enforcement of the note or mortgage; (2) the plaintiff had not breached the foreclosure agreement; (3) the defendant's claim for negligence should be stricken because the plaintiff owed the defendant no duty of care; and (4) the defendant's claim of breach of the covenant of good faith and fair dealing should be stricken because the defendant had failed to prove that the plaintiff acted in bad faith. In granting the plaintiff's motion to strike, the court stated as follows: "While courts have recognized equitable defenses in foreclosure actions, they have generally only been considered proper when they attack the making, validity or enforcement of the lien, rather than some act or procedure of the lienholder. . . . The rationale behind this is that counterclaims and special defenses which are not limited to the making, validity or enforcement of the note or mortgage fail to assert any connection with the subject matter of the foreclosure action and as such do not arise out of the same transaction as the foreclosure action. . . . *Eastern Savings Bank* v. *Mara*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-05-4006305 (June 5, 2006) (*Dooley, J.*). The court finds that insofar as all the allegations of [the defendant's] five count counterclaim arise from the execution and performance of the forbearance agreement they are not related to the making, validity or enforcement of the note [or] mortgage. For the foregoing reasons, the plaintiff's motion to strike the defendant the [defendant's] counterclaims in their entirety is hereby GRANTED." (Internal quotation marked omitted.) Thereafter, on motion of the plaintiff, the court rendered judgment in favor of the plaintiff on all counts of the defendant's counterclaim. This appeal followed.

At the outset, we note that the parties are in dispute concerning our standard of review. The plaintiff claims that because the central question in this appeal is whether the court correctly applied the transaction test set forth in Practice Book § 10-10,[5] which is applicable, generally, to counterclaims, our review should be deferential. To be sure, numerous opinions of this court and our Supreme Court support the proposition that a trial court's determination of whether a particular counterclaim fits within the parameters of Practice Book § 10-10 requires a reviewing court only to assess whether, in coming to its conclusions, the court abused its discretion. See, e.g., *Wallingford* v. *Glen Valley Associates, Inc.*, 190 Conn. 158, 161, 459 A.2d 525 (1983) ("[t]he transaction test is one of practicality, and the trial court's determination as to whether the test has been met ought not to be disturbed except for an abuse of discretion" [internal quotation marks omitted]). The defendant, on the other hand, claims that our review should be plenary given that the central question raised in this appeal is whether the court utilized the correct legal test in its analysis of the counterclaim's legal viability and not whether the court abused its discretion in

its application of the correct criteria. We agree with the defendant in this regard. From our review of the court's decision, it is not apparent that the court considered the parameters of Practice Book § 10-10 in deciding to strike the counterclaim. To the contrary, the court expressly fastened its decision on whether the counterclaim met the "making, validity and enforcement" standard generally applicable to legal defenses in foreclosure actions. Because the defendant's claim that the court utilized the incorrect test raises a question of law, our review is plenary. See *Wells Fargo Bank of Minnesota, N.A.* v. *Morgan*, 98 Conn. App. 72, 78, 909 A.2d 526 (2006).

We begin our analysis with a consideration of whether the court applied the legally correct test in assessing the viability of the counterclaim. As noted, the court struck the counterclaim on the basis that it did not relate to the making, validity or enforcement of the original note and mortgage. Although we are aware that the "making, validity or enforcement test" has been employed by courts in assessing the viability of special defenses and counterclaims in foreclosure cases, and we acknowledge that the tests can be intertwined, we believe that the proper test to be utilized when assessing the legal viability of a counterclaim is set forth in Practice Book §10-10, and is commonly referred to as the "transaction test." Although that test, in the foreclosure context, may incorporate a consideration of whether a counterclaim has a sufficient nexus to the making, validity or enforcement of the note and mortgage, it does not limit a viable counterclaim to those that directly challenge the making, validity or enforcement of a note or mortgage.

To be sure, a review of decisional law regarding the proper test for assessing the applicability of defenses and counterclaims in foreclosure actions does not provide complete clarity. Close scrutiny reveals, however, that even when courts utilize the phrase, "making, validity or enforcement," in assessing the viability of both special defenses and counterclaims, courts require that a viable legal defense directly attack the "making, validity or enforcement" while, in assessing counterclaims, courts have required only that the subject of the counterclaims have a sufficient connection to the making, validity or enforcement of the note and mortgage to pass the transaction test. For example, in *Morgera* v. *Chiappardi*, 74 Conn. App. 442, 813 A.2d 89 (2003), this court applied the transaction test to a counterclaim in a foreclosure action in which the defendant had claimed that she had entered into the subject loan transaction only as part of a package in which the plaintiff had made false representations regarding other properties he had conveyed to the defendant at the same time. In reversing the trial court, this court held that the counterclaim had arisen from the same transaction as the subject mortgage and note because there was an

adequate nexus between the transactions. Id., 458–59. This court opined: "In addition, insofar as the court's posture permitted the defendant to do so, the concatenation of circumstances engendered by the plaintiff's fraudulent misrepresentations made for a reasonable nexus between the counterclaim and his conduct in inducing the defendant's making of the note and mortgage on the property . . . hence raising serious questions about their validity and enforcement." Id., 452.

With similar reasoning but leading to a different outcome, in *Mechanics Savings Bank* v. *Townley Corp.*, 38 Conn. App. 571, 572–73, 662 A.2d 815 (1995), a junior encumbrancer filed special defenses and counterclaims alleging that the plaintiff mortgagee had breached agreements with him regarding property other than the subject property, this court noted that the trial court had stricken the special defenses on the ground that they did not address the making, validity or enforcement of the notes and mortgages that were the subject of the complaint. The trial court also struck the counterclaims because the agreements upon which they rested were "transactions separate and distinct from the subject of the complaint." Id., 573.

Similarly, in *Southbridge Associates*, *LLC* v. *Garofalo*, 53 Conn. App. 11, 17, 728 A.2d 1114, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999), this court found that the trial court properly granted summary judgment where the defendant had filed both special defenses and counterclaims on the basis that the special defenses failed to attack the making, validity or enforcement of the subject notes and mortgages and that the counterclaims did not arise out of the transactions that were the subject of the plaintiff's complaint. Applying the same analysis, this court in *JP Morgan Chase Bank*, *Trustee* v. *Rodrigues*, 109 Conn. App. 125, 952 A.2d 56 (2008), upheld the decision of the trial court striking the defendants' counterclaims. As to the counterclaim seeking damages for emotional distress, this court opined: "In the present case, the defendants' allegations related to the conduct of the plaintiff that occurred after the execution of the mortgage note and with respect to documents other than the mortgage note. The disparity between the subject matter of the plaintiffs' complaint and that of the defendants' counterclaim warranted the court's conclusion that the counterclaim did not arise from the same transaction." Id., 133. As to the counterclaim alleging a CUTPA violation, the court agreed that it should be stricken on the basis that it did not relate to the making, validity or enforcement of the mortgage note and, thus, also did not arise out of the same transaction as the complaint. Id., 133–35.

We acknowledge that this latter language, regarding the making, validity or enforcement of the note, could be construed to state that for a counterclaim in a foreclosure action to be legally viable, it must directly attack

the making, validity or enforcement of the subject mortgage or note. We find more persuasive the essential conclusion of *Morgera*, *Rodrigues*, and similar decisions, that such a counterclaim must simply have a sufficient relationship to the making, validity or enforcement of the subject note or mortgage in order to meet the transaction test as set forth in Practice Book § 10-10 and the policy considerations it reflects. Our view is buttressed by this court's opinion in *South Windsor Cemetery Assn.*, *Inc.* v. *Lindquist*, 114 Conn. App. 540, 970 A.2d 760, cert. denied, 293 Conn. 932, 981 A.2d 1076 (2009), in which it was confronted with a counterclaim in a legal posture it found similar to the counterclaims in *Rodrigues*. The court in *Lindquist* opined, in regard to the similarities between the two cases: "Likewise, in the present case, the transaction underlying the complaint involves the transfer of an interest in land, while the transactions underlying the stricken counts of the counterclaim involve interactions between the plaintiff and the defendant that occurred well after the transfer took place. Therefore, the court did not abuse its discretion in finding that the stricken counts involved issues of fact and law different from those in the complaint and that bringing the counterclaim as a separate action would not involve a substantial duplication of effort by the parties and the courts." (Internal quotation marks omitted.) Id., 548.

We conclude, accordingly, that in assessing the legal viability of counterclaims to a foreclosure action, the court should employ the transaction test set forth in Practice Book § 10-10, and that although this test may require an assessment of whether the counterclaim in question relates to the making, validity or enforcement of the subject note and mortgage, there can be such a nexus even though the counterclaim may not directly attack the making, validity or enforcement of the mortgage and note which form the basis of the foreclosure complaint.

We turn now to a consideration of the transaction test. Practice Book § 10-10 provides in pertinent part: "In any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint." In assessing the legal viability of a counterclaim and, in particular, whether it arises from the same transaction as the complaint, we have not required a complete identity of issues. Rather, the claims must have a sufficient closeness that the trial of the complaint and counterclaim will not imperil judicial economy. For example, in *Ceci Bros.*, *Inc.* v. *Five Twenty-One Corp.*, 81 Conn. App. 419, 423 n.3, 840 A.2d 578, cert. denied, 268 Conn. 922, 846 A.2d 881 (2004), this court concluded, in the particular facts: "Because the two agreements, one alleged in the plaintiff's amended complaint and the other alleged

in the defendant's counterclaim, were intertwined, the counterclaim in this case was proper." As this court has previously observed: "Our Supreme Court has instructed that the [r]elevant considerations in determining whether the transaction test has been met include whether the same issues of fact and law are presented by the complaint and the [counter]claim and whether separate trials on each of the respective claims would involve a substantial duplication of effort by the parties and the courts." (Internal quotation marks omitted.) *South Windsor Cemetery Assn., Inc.* v. *Lindquist*, supra, 114 Conn. App. 547. Further, our Supreme Court has stated: "Where the underlying purposes of [Practice Book § 10-10], to wit, judicial economy, avoidance of multiplicity of litigation, and avoidance of piecemeal disposition of what is essentially one action, are thwarted rather than served by the filing of a cross claim, the cross claim may properly be expunged." (Internal quotation marks omitted.) *Wallingford* v. *Glen Valley Associates, Inc.*, supra, 190 Conn. 161. In assessing this test, this court has opined: "The transaction test is one of practicality, and the trial court's determination as to whether that test has been met ought not to be disturbed except for an abuse of discretion." (Internal quotation marks omitted.) *South Windsor Cemetery Assn., Inc.* v. *Lindquist*, supra, 546.

In the procedural posture we face in the present case, however, we are not in a position to assess whether the court abused its discretion in deciding whether the subject counterclaim met the transaction test of Practice Book § 10-10 because it is apparent from the record that the court did not employ the transaction test. Rather, as noted, the court concluded that because the counterclaim did not attack the making, validity or enforcement of the note or mortgage, the claim, as such, did not arise out of the same transaction as the subject of the complaint. In coming to this conclusion, the court made no assessment of the relationship between the forbearance agreement and the enforceability of the mortgage or note; nor did the court assess whether permitting the counterclaim to go forward would have fulfilled or thwarted the aims of judicial economy. Although we could remand this appeal in order to require the trial court to make an explicit assessment in accord with the provisions of Practice Book § 10-10, we are able to decide the issue now because resolution of the issue requires no additional fact finding and also because both parties have fully briefed the issue. Therefore, we conclude that "a final resolution of the defendant's appeal will best serve the interests of judicial economy." (Internal quotation marks omitted.) *Collins* v. *Anthem Health Plans, Inc.*, 275 Conn. 309, 332, 880 A.2d 106 (2005).

The question to decide is whether the subject of the defendant's counterclaim is sufficiently intertwined with the complaint that it arises from the same transac-

tion. In this instance, it would be an abuse of discretion to answer that question in the negative. Unlike the factual circumstances of *JP Morgan Chase Bank, Trustee* v. *Rodrigues*, supra, 109 Conn. App. 127–28, in which the defendants filed a counterclaim alleging that the plaintiff had forced them into entering into another agreement notwithstanding an earlier forbearance agreement, the forbearance agreement we confront in the case at hand was entered into between the parties during this litigation and in regard to the subject note and mortgage. Here, the defendant does not claim that the forbearance agreement modified the terms of the original mortgage and note, but, rather, that the forbearance agreement should have restrained the plaintiff's pursuit of the equitable remedy of foreclosure. That distinction separates this case from *Rodrigues*, where, as noted, the defendant had claimed damages resulting from the plaintiff's failure to adhere to an extrinsic agreement. Id. Unlike *Rodrigues*, the defendant in the case at hand claims that the plaintiff had entered into an agreement to forbear from pursuing foreclosure, thus directly implicating the plaintiff's right, in equity, to seek the remedy of a judgment by foreclosure.

Also, as pointed out by the defendant, the plaintiff, in reasserting its right to pursue the remedy of foreclosure, affirmed the existence of the forbearance agreement and alleged, as partial justification for its pursuit, that the defendant had failed to comply with terms of the forbearance agreement. In that manner, as noted, the plaintiff incorporated the forbearance agreement into the enforceability of the original note and mortgage.[6] Furthermore, in seeking summary judgment, the plaintiff directly invoked the terms and conditions of the forbearance agreement in asserting its right to proceed to a judgment of foreclosure. Thus, by its own pleading, the plaintiff has confirmed the nexus between the enforcement of the note and mortgage and the terms and conditions of the parties' forbearance agreement.

In regard to the risk of duplication, a criterion for the application of the transaction rule embodied in Practice Book § 10-10, there can be no risk that proceeding on the counterclaim in this foreclosure action would cause a duplication of litigation as the foreclosure litigation has been concluded by withdrawal.

Finally, there are reasons well grounded in public policy and consistent with the equitable nature of foreclosure, to find that a mortgagee who enters into a forbearance agreement during foreclosure litigation with a qualified residential borrower should not be permitted to pursue the remedy of foreclosure when the borrower has fully complied with its terms. Accordingly, a lender who wrongfully pursues the remedy of foreclosure in violation of the terms of a foreclosure forbearance agreement it has negotiated in the midst of litigation may be liable for any harm it causes to a

borrower for its failure to forbear as promised. If there is no potential for consequences to a lender who determines, unilaterally, to violate the terms of a forbearance agreement reached through the aegis of the court-mandated foreclosure forbearance mediation program, the program itself may sink into irrelevance and ultimate disuse. Surely the General Assembly did not envision such an outcome in the creation of the foreclosure forbearance mediation program.

In this instance, we conclude that the court incorrectly struck the defendant's counterclaim because, contrary to the court's conclusion, it squarely meets the transaction test. Furthermore, the advancement of the counterclaim in this instance would enhance and not detract from the goals of judicial economy and the avoidance of duplicative litigation.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] The court's foreclosure mediation program was created pursuant to General Statutes § 49-31m, which requires the creation of such a program in each judicial district in actions to foreclose mortgages on residential real property. Section 49-31m provides in relevant part: "Such foreclosure mediation shall (1) address all issues of foreclosure, including, but not limited to, reinstatement of the mortgage, assignment of law days, assignment of sale date, restructuring of the mortgage debt and foreclosure by decree of sale . . . ." General Statutes § 49-31f, captioned "Application for protection from foreclosure action. Qualifications. Court determination of eligibility. Stay of foreclosure action," sets forth the criteria for referral of residential foreclosure actions to court-sponsored mediation.

[2] The parties are in dispute as to whether the defendant fully complied with the terms of the forbearance agreement. The plaintiff claims that the agreement called for an acceleration of the note, requiring the defendant to pay the loan in full or submit additional financial information to the plaintiff by February 1, 2009. The defendant, on the other hand, claims that the requirement in the agreement that she pay the loan in full by a certain date meant only that, once she had made three required monthly payments, the agreement required her to resume monthly payments in accord with the tenor of the original note until it was paid in full. In resolving the issues on appeal, we need not and, indeed, should not attempt to resolve this fact-laden dispute as to the meaning of the language and intent of the parties regarding the forbearance agreement.

[3] The affidavit contained several paragraphs concerning the forbearance agreement. Of note, the affidavit alleged, in part, that: "Section 6a of the Agreement states that if after the payments made by borrower as referenced in Section 3 of the Agreement, the loan is still delinquent, the borrower must make arrangements ***prior*** to the expiration of the terms contained in Section 3 to cure the delinquency. Section 7 of the Agreement states that if the parties are unable to agree to a resolution for the remaining delinquency amount, the Plaintiff may proceed with its foreclosure action, without further notice. Section 9 of the Agreement states that the Plaintiff will not discontinue the pending foreclosure action until the borrower's account is current." (Emphasis in original.)

[4] The reasons for the substantial gaps in time between filings cannot be readily explained by reference to the record. It is apparent, however, that at some juncture, the defendant was successful in restructuring and reinstating the underlying debt, thus nullifying the need, from the plaintiff's optic, of pursuing the foreclosure litigation.

[5] Practice Book § 10-10 provides: "Supplemental pleadings showing matters arising since the original pleading may be filed in actions for equitable relief by either party. In any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff and cross claims against any codefendant provided that each such counterclaim and cross claim arises out of the transaction or one of the transactions which is the subject of the

plaintiff's complaint; and if necessary, additional parties may be summoned in to answer any such counterclaim or cross claim. A defendant may also file a counterclaim or cross claim under this section against any other party to the action for the purpose of establishing that party's liability to the defendant for all or part of the plaintiff's claim against that defendant."

[6] In assessing the viability of the counterclaim under the transaction test, we assume the accuracy of the allegations the counts contain. In doing so, we have and offer no opinion as to whether those accusations can stand the test of proof in an evidentiary setting in which their accuracy is not assumed.

---