******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# THE BANK OF NEW YORK MELLON, TRUSTEE
## *v.* JEFFREY J. MAURO ET AL.
### (AC 38970)

Lavine, Sheldon and Harper, Js.

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain of the defendants' real property. The trial court referred the parties to the foreclosure mediation program, and the mediator issued a final report indicating that the defendants did not appear for a scheduled mediation, and that time had expired. The mediator referred the matter for further proceedings back to the trial court, which granted in part the plaintiff's motion to strike the defendants' special defenses and counterclaims. In August, 2015, the defendants filed their operative five count counterclaim, which reasserted claims for negligent, reckless and intentional misrepresentation, as well as claims for violations of the Connecticut Unfair Trade Practices Act (§ 42-110a et seq.) and the federal Truth in Lending Act (15 U.S.C. § 1601 et seq.). Subsequently, the court granted the plaintiff's motion for summary judgment as to liability on the complaint, and as to the five counterclaims. In addressing the motion for summary judgment as to the counterclaims, the court ruled that the counterclaims failed as a matter of law because they pertained to the plaintiff's conduct during mediation, which occurred years after the execution of the mortgage and the defendants' default. The court also concluded that the counterclaims that pertained to the conduct of A Co., the plaintiff's predecessor in interest to the note and mortgage, were directed at the wrong party and were barred by the applicable statutes of limitations. Thereafter, the defendants appealed to this court, which dismissed the appeal in part. Subsequently, the trial court granted the plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon, and the defendants filed an amended appeal. *Held*:

1. The trial court did not err in granting the plaintiff's motion for a judgment of strict foreclosure with respect to the property on the basis of its determination that there were no genuine issues of material fact and that the plaintiff was entitled to summary judgment as a matter of law as to liability on its foreclosure complaint: at the time of the granting of the plaintiff's motion for summary judgment, the trial court found that the plaintiff had established a prima facie case for foreclosure, the defendants' operative pleading contained no special defenses to foreclosure, and the defendants' affidavits in opposition to the plaintiff's motion for summary judgment failed to create a genuine issue of material fact as to any of the essential elements of the plaintiff's prima facie case, namely, whether the plaintiff was the holder of the note, the defendants defaulted on the loan, or the plaintiff had satisfied the necessary preconditions to foreclosure; moreover, the defendants' claim that a genuine issue of material fact existed as to whether their counterclaims had a reasonable nexus to the making, validity or enforcement of the mortgage and note was unavailing, as the validity or invalidity of the counterclaims was irrelevant to whether the plaintiff was entitled to prevail in its primary action and, thus, to have summary judgment rendered in its favor in that action.

2. The trial court properly rendered judgment in favor of the plaintiff on all five counts of the defendants' operative counterclaim: that court properly concluded that, to the extent that the defendants' counterclaims were based on alleged misdealings with the defendants by the plaintiff's predecessor, A Co., which was not a party to this foreclosure action, those counterclaims failed as a matter of law because there was no evidence of record that the plaintiff expressly assumed the liabilities of A Co. when it took the mortgage from A Co. by assignment, and, with respect to the counterclaims that pertained to the plaintiff's conduct during the mediation that occurred years after the execution of the mortgage and the defendants' default, the trial court did not abuse its discretion in determining that those counterclaims failed the transaction test of the applicable rule of practice (§ 10-10), as they did not have a

reasonable nexus to the making, validity and enforcement of the mortgage and note; moreover, because the plaintiff's motion for summary judgment expressly sought the dismissal of the defendants' counterclaims on that ground, and both parties analyzed that portion of the plaintiff's motion for summary judgment as a motion to strike the defendants' counterclaims, this court treated the portion of the plaintiff's motion for summary judgment that sought the dismissal of the counterclaims for improper joinder as a properly presented motion to strike, the trial court's judgment in favor of the plaintiff on the defendants' counterclaims had to be construed as a final judgment of dismissal for improper joinder, rather than a final judgment on the merits of the defendants' substantive claims, and it was proper for the plaintiff to use a motion for summary judgment as a means of testing whether the counterclaims satisfied the transaction test of § 10-10.

Argued May 23—officially released October 17, 2017

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the named defendant et al. filed a counterclaim and special defenses; thereafter, the court, *Domnarski, J.*, granted in part the plaintiff's motion to strike the counterclaim and special defenses; subsequently, the court, *Aurigemma, J.*, granted the plaintiff's motion for summary judgment as to liability on the complaint and as to the counterclaim, and the named defendant et al. appealed to this court; thereafter, this court dismissed the appeal in part; subsequently, the court, *Aurigemma, J.*, granted the plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon, and the named defendant et al. filed an amended appeal. *Affirmed.*

*Kenneth A. Votre*, for the appellants (named defendant et al.).

*Zachary Grendi*, with whom, on the brief, was *Pierre-Yves Kolakowski*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. In this mortgage foreclosure action, the defendants,[1] Jeffrey J. Mauro and Renee A. Mauro, appeal from the judgment rendered by the trial court, *Aurigemma, J.*, in favor of the plaintiff, The Bank of New York Mellon,[2] on: the plaintiff's claim for strict foreclosure as to the defendants' mortgaged property in Killingworth, Connecticut; and the defendants' counterclaims against the plaintiff, seeking damages and equitable relief based upon alleged misrepresentations to them and other alleged misdealings with them concerning the note and mortgage here at issue, both by the plaintiff and by the original lender, America's Wholesale Lender (AWL), which was the plaintiff's predecessor in interest to the note and mortgage. As to the plaintiff's claim for strict foreclosure, the defendants argue that the court erred in basing its judgment for the plaintiff upon its prior, erroneous decision rendering summary judgment for the plaintiff as to the defendants' liability for foreclosure in this action, assertedly without sufficient evidence to establish the absence of any genuine issues of material fact on that issue. As to their counterclaims against the plaintiff, the defendants argue that, to the extent that such counterclaims are based upon the plaintiff's own alleged misdealings with them rather than those of AWL, the court erred in rendering summary judgment for the plaintiff by: (1) ruling that such counterclaims, so narrowed, were not properly pleaded in this action because they have no reasonable nexus to the making, validity, or enforcement of the subject note and mortgage; (2) ruling that one such counterclaim was barred by the applicable statute of limitations; and (3) failing to follow the prior ruling of a different judicial authority, in partially denying a motion to strike, that certain such counterclaims were legally sufficient to state claims upon which relief could be granted. We disagree with the defendants on each of their claims, and thus affirm the judgment of the trial court in its entirety.

The record reveals the following facts and procedural history. On November 29, 2006, Jeffrey Mauro executed an "interest only fixed rate" note in favor of AWL, in the principal amount of $350,000. To secure that note, the defendants executed an open-ended mortgage in favor of Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for AWL, on their property located at 330 Roast Meat Hill Road in Killingworth. Under the terms of the note, Jeffrey Mauro was obligated to make monthly payments of $1968.75 for the first ten years of the loan, and increased monthly payments of $2661.27 thereafter, until his entire indebtedness under the note was paid in full.

Jeffrey Mauro received a notice of default, dated September 16, 2009, advising him that, as of September 16, 2009, he had missed several months of payments on

the note, totaling $5769.17. He was instructed in the notice to cure the default by October 16, 2009, and informed that if he failed to do so, his obligation to make payments of principal, interest, costs and fees required under the note would be accelerated and foreclosure proceedings would be brought against him as to the mortgaged property. Ultimately, Jeffrey Mauro was unable to cure the default by the date specified in the notice of default.

On July 25, 2011, AWL, as the holder of the note, endorsed the note in blank and transferred physical possession of it to the plaintiff. Concurrently with this transfer, MERS, as nominee for AWL, executed an assignment of the mortgage in favor of the plaintiff. Accordingly, by August, 2011, the plaintiff was both the holder of the note and the assignee of the mortgage.

On June 24, 2013, the plaintiff commenced this action by serving the defendants with legal process returnable to the Superior Court for the judicial district of Middlesex.[3] In its complaint, the plaintiff sought foreclosure of the mortgage, immediate possession of the mortgaged property, and reasonable attorney's fees and costs. By that time, the total remaining principal balance on the note was approximately $348,685.68, and Jeffrey Mauro's total indebtedness to the plaintiff thereunder, which also included unpaid interest, late charges and costs, was greater. Thereafter, on July 22, 2013, Jeffrey Mauro submitted to the plaintiff a request for foreclosure mediation pursuant to General Statutes §§ 49-31k through 49-31o. That request was granted by the court on July 26, 2013, after which a foreclosure mediation was conducted during the months of August and October, 2013. On November 22, 2013, the foreclosure mediator filed a final report with the court, in which she noted that the "defendant[4] did not appear for the [October 11, 2013] mediation, and time has expired." (Footnote added.) Accordingly, the mediator referred the matter back to the court for further proceedings.

On January 21, 2014, the defendants filed their answer to the plaintiff's complaint, along with seven special defenses and five counterclaims. The special defenses and counterclaims were later amended on December 2, 2014. In their amended pleading, the defendants asserted four special defenses to the plaintiff's claim for foreclosure, specifically: that AWL had "misrepresented the terms of the loan"; that the plaintiff itself had "failed to act in good faith during the [foreclosure] mediation"; that AWL had violated state and federal law by "failing to comply with specific disclosure requirements" during the loan initiation process; and that the mortgage, as originally negotiated by AWL, was the product of fraud, misrepresentations and violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., therefore barring the plaintiff from foreclosing on the property. In their six counterclaims,

the defendants asserted claims for breach of contract, negligent misrepresentation, reckless misrepresentation, intentional misrepresentation, violation of CUTPA and violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq.

On December 17, 2014, the plaintiff filed a motion to strike the defendants' special defenses and counterclaims, which the trial court, *Domnarski, J.*, granted in part and denied in part on April 17, 2015. In striking each of the defendants' four special defenses, the court ruled that such special defenses were improper because they were predicated upon the conduct of a nonparty, AWL, and/or they were not related to the making, validity or enforcement of the note or mortgage. In striking counts one, five and six of the defendants' counterclaims, the court ruled that: (1) the first counterclaim, alleging breach of contract, failed to allege the existence of a written agreement between the parties, and thus was barred by the statute of frauds; (2) the fifth counterclaim, alleging a violation of CUTPA, was based solely upon alleged misdealings with the defendants by a nonparty, AWL, for which the plaintiff could not be held liable without expressly assuming such liability; and (3) the sixth counterclaim, alleging a violation of TILA, had been pleaded improperly without the court's permission. The court denied the plaintiff's motion to strike, however, as to the defendants' second, third and fourth counterclaims, which alleged, respectively, negligent, reckless and intentional misrepresentation by both AWL and the plaintiff. In denying the motion to strike as to those counterclaims, the court held that, although the plaintiff could not be held liable for AWL's alleged misdealings with the defendants unless the plaintiff expressly assumed such liability, which had not been alleged, the challenged counterclaims also contained allegations that the plaintiff itself had made material misrepresentations to the defendants during the foreclosure mediation, which allegations stated claims upon which relief could be granted. Notably, the plaintiff did not challenge the defendants' amended counterclaims, as it had challenged their amended special defenses, on the ground that they were improperly pleaded because they were not related to the making, validity or enforcement of the note or mortgage.

On August 14, 2015, the defendants submitted a request for leave to file yet another amended counterclaim, along with their now operative, five count counterclaim. In the first three counts of their operative counterclaim, the defendants reasserted claims against the plaintiff of negligent, reckless and intentional misrepresentation based upon: AWL's alleged misrepresentations to them concerning the terms of the loan, the interest rate on the loan, and their right to rescind the loan; and the plaintiff's own, allegedly deceitful conduct toward them during the foreclosure mediation, more particularly, giving them multiple false assurances that

the terms of the note would be modified to avoid fore-closure on the property, when the plaintiff had no intention to agree to such modifications. In the fourth count of the operative counterclaim, the defendants alleged that the plaintiff had violated CUTPA during the foreclosure mediation by making material misrepresentations of fact as to the status of the loan and "wrongfully [beginning] foreclosure proceedings against [them] by misapplying and miscrediting [their] payments, creating a default in the loan in order to proceed with the foreclosure." Finally, in the fifth count of the operative counterclaim, the defendants alleged that the plaintiff was liable to them under TILA, because: at the time of the loan's execution, AWL had misrepresented to them both the terms of the loan and the suitability of the loan for them; and later, during the foreclosure mediation, the plaintiff itself had failed to provide them "with an accurate and truthful rate of calculation for their mortgage."

Thereafter, on October 7, 2015, the plaintiff filed its answer and special defenses to the defendants' operative counterclaim. The plaintiff asserted in that pleading that, to the extent that the defendants' counterclaims were based upon alleged misdealings with them by a nonparty, AWL, the plaintiff was not liable for such misdealings and, in the alternative, because any such misdealings had occurred in 2006, those portions of the counterclaims were barred by applicable statutes of limitations. Lastly, the plaintiff asserted that, to the extent that the defendants' counterclaims were based upon the plaintiff's own alleged misdealings with them during the 2013 foreclosure mediation, those claims were "not sufficiently related to the making, validity or enforcement of the note and mortgage" to permit their assertion as counterclaims in this action.

The following month, the plaintiff filed a motion for summary judgment. In support of its motion, insofar as it sought summary judgment on the issue of the defendants' liability for foreclosure, the plaintiff asserted that it had established a prima facie case for foreclosure by showing that there was no genuine issue of material fact: that the plaintiff was the holder of the note; that the defendants had defaulted under the express terms of the note; and that the plaintiff had satisfied "any conditions precedent to foreclosure, as established by the note and mortgage . . . ." Insofar as the plaintiff sought summary judgment on the defendants' operative counterclaims, the plaintiff argued that "the defendants' counterclaims should be dismissed with prejudice because they are . . . time barred, relate to conduct by other parties for which [the] plaintiff is not responsible, or are unrelated to the making, validity or enforcement of the note and mortgage." On the final ground of unrelatedness to the making, validity or enforcement of the note and mortgage, the plaintiff argued that the defendants' counterclaims should be dismissed because they "all . . . fail the 'transaction

test' propounded in Practice Book § 10-10 and . . . [the] defendants would not benefit from an opportunity to replead their counterclaims yet again, which they have already done four times previously." (Emphasis omitted.)

In opposition to the motion for summary judgment, the defendants argued, inter alia, that summary judgment was improper because: (1) in partially denying the plaintiff's earlier motion to strike, Judge Domnarski had established, as the law of the case, that the defendants' counterclaims for negligent, reckless and intentional misrepresentation were legally sufficient to state claims upon which relief could be granted; (2) there was a genuine issue of material fact as to whether the defendants' counterclaims had a reasonable nexus to the making, validity or enforcement of the mortgage and note; and (3) the defendants' counterclaim under TILA was not time barred because it was not based upon the initial execution of the mortgage by AWL, but instead upon the plaintiff's deceptive conduct during the 2013 foreclosure mediation, which had taken place less than three years before this action was commenced.[5]

On February 19, 2016, the court issued its memorandum of decision, rendering summary judgment in favor of the plaintiff both as to the defendants' liability for foreclosure in this action and on the defendants' operative counterclaims. In its decision, the court held that the plaintiff had established a prima facie case as to its foreclosure claim, which the defendants had "presented no evidence to rebut." Thereafter, in addressing the plaintiff's motion for summary judgment as to the defendants' counterclaims, the court noted that, "[o]ther than conduct that occurred prior to the time the note and mortgage were executed, the allegations in the counterclaims complain about the plaintiff's conduct which occurred in postdefault mortgage modification negotiations." The court thus concluded that the challenged counterclaims were "virtually indistinguishable" from those ruled improper in *U.S. Bank National Assn.* v. *Sorrentino*, 158 Conn. App. 84, 95–96, 118 A.3d 607, cert. denied, 319 Conn. 951, 125 A.3d 530 (2015), because here, as in *Sorrentino*, the challenged counterclaims "pertain[ed] to the plaintiff's conduct during mediation, which occurred years after the execution of the mortgage and the defendants' default." The court thus ruled that "[the defendants'] counterclaims all fail as a matter of law. The counterclaims which pertain to the plaintiff's conduct which allegedly occurred during the postdefault mediation process cannot [survive] under *Sorrentino* . . . . The counterclaims which pertain to the conduct of the plaintiff's predecessor are directed at the wrong party and are barred by the applicable statutes of limitations . . . . For the foregoing reasons, summary judgment enters in favor of the plaintiff as to liability only and judgment enters in favor of

the plaintiff on the defendants' counterclaims."

Thereafter, on April 7, 2016, the plaintiff filed a motion for judgment of strict foreclosure. On April 25, 2016, the court entered a judgment of strict foreclosure, awarding the plaintiff $572,331.79, a sum representing the entire remaining unpaid principal balance on the loan, plus accrued interest, late charges, and reasonable attorney's fees. The court then designated May 31, 2016, as the applicable law day. The defendants subsequently filed the present appeal.[6] Additional facts will be set forth as necessary.

I

The defendants' first claim on appeal is that the court erred in granting the plaintiff's motion for strict foreclosure with respect to the property. More specifically, the defendants assert that the court erred in basing its ruling on that motion upon the prior granting of the plaintiff's motion for summary judgment on the issue of their liability for foreclosure, because there assertedly were genuine issues of material fact on that issue that should have precluded the court from rendering summary judgment thereon. We are not persuaded.

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter of law. . . . Because the burden of proof is on the movant, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"Of course, [o]nce the moving party has met its burden [of production] . . . the opposing party [to survive summary judgment] must present evidence that demonstrates the existence of some disputed factual issue." (Citations omitted; internal quotation marks omitted.) *Maltas* v. *Maltas*, 298 Conn. 354, 365–66, 2 A.3d 902 (2010). It is well settled that "a court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 176, 73 A.3d 742 (2013).

As discussed in the preceding paragraphs, the court, *Domnarski, J.*, had previously granted the plaintiff's motion to strike the defendants' four special defenses to the plaintiff's foreclosure action. Neither those nor any other special defenses to the plaintiff's foreclosure claim were ever repleaded thereafter. Thus, at the time the court, *Aurigemma, J.*, rendered summary judgment in favor of the plaintiff on the issue of the defendants' liability, the defendants' operative pleading contained

no special defenses to foreclosure, but only the operative counterclaims described in the preceding paragraphs. In granting the plaintiff's motion for summary judgment as to the defendants' liability for foreclosure, the court held that the plaintiff had established a prima facie case for foreclosure because it had presented documentary evidence and affidavits establishing that: (1) the plaintiff was in physical possession of the note prior to filing the present action; (2) the defendants had defaulted on their loan by 2009; and (3) the plaintiff had satisfied all necessary conditions to seek foreclosure under the terms of the note by timely mailing the defendants the notice of default. The court further noted that the defendants had failed to put forth any evidence creating a genuine issue of material fact as to any such essential element, and held that the allegations in the defendants' counterclaims "[were] not proper grounds for a defense to a foreclosure action."

The defendants now assert that their affidavits in opposition to the plaintiff's motion for summary judgment created a genuine issue of material fact that should have precluded the court from rendering summary judgment in favor of the plaintiff in the primary foreclosure action. More specifically, the defendants point to the following assertions within their affidavits: (1) "[We] elected not to seek other financing or to seek family assistance to resolve [our] loan situation because [we] believed [that] the [plaintiff] would do what [it] told [us it] would do, and reinstate [our] loan"; (2) "the [plaintiff] promised to modify our mortgage, and then failed to do so after we had provided all the requested information, which directly resulted in this foreclosure action"; and (3) "in addition, the [plaintiff] wrongfully began foreclosure proceedings against [us] by misapplying and miscrediting our payments, which wrongfully . . . created a default in the loan in order to proceed with the foreclosure."

The contents of those affidavits, however, do not create a genuine issue as to any of the essential elements of the plaintiff's prima facie case, namely, whether it was the holder of the note, the defendants defaulted on the loan, or the plaintiff satisfied the necessary preconditions to foreclosure. Nor do such allegations support any special defense to foreclosure for, as previously noted, no such special defense was then pending. Instead, the contents of the defendants' affidavits provide—at most—factual support for their counterclaims against the plaintiff for misrepresentation, fraud, and violations of CUTPA and TILA. Curiously, the defendants attempt to overcome this fatal deficiency by arguing that there is "a genuine issue of material fact . . . as to whether [their] counterclaims have a reasonable nexus to the making, validity, or enforcement of the mortgage and note" and, *on that ground*, they claim that the court erred in granting the plaintiff's motion for summary judgment as to their liability for

foreclosure and its subsequent motion for a judgment of strict foreclosure.

The validity or invalidity of a counterclaim, however—either substantively, as a claim upon which relief can be granted on its merits, or procedurally, as a claim that can properly be brought as a counterclaim in the context of the plaintiff's primary action—is completely irrelevant to whether the plaintiff is entitled to prevail in its primary action, and thus to have summary judgment rendered in its favor in that action. See 49 C.J.S. 357, Judgments § 304 (2009) ("The mere assertion of counterclaims does not prevent the granting of summary judgment on the complaint when the counterclaims are sufficiently separable from the plaintiff's causes of action. Likewise, the mere assertion of . . . a counterclaim that does not itself meet the criteria for summary judgment . . . will not preclude summary judgment on the complaint." [Footnotes omitted.]). In the absence of evidence demonstrating the existence of a genuine issue of material fact as to any essential element of the plaintiff's prima facie case; *GMAC Mortgage, LLC* v. *Ford*, supra, 144 Conn. App. 176; or, in the alternative, as to any recognized special defense—and here there is none—the defendants' claim of error as to the granting of the plaintiff's motion for summary judgment on the issue of their liability for foreclosure is completely devoid of merit, and must therefore be rejected. Cf. *Haaser* v. *A. C. Lehmann Co.*, 130 Conn. 219, 220, 33 A.2d 135 (1943) ("a defense to the complaint cannot be supplied by the affirmative allegations of a cross-complaint"), citing *Erwin M. Jennings Co.* v. *DiGenova*, 107 Conn. 491, 495, 141 A. 866 (1928) (a defense to an action should be pleaded as a special defense, not as a counterclaim or a cross complaint).

II

The defendants' final claim is that the trial court erred in rendering judgment in favor of the plaintiff on all five counts of their operative counterclaim. With respect to counts one, two and three of the operative counterclaim, sounding, respectively, in negligent, reckless and intentional misrepresentation, the defendants argue that the court misinterpreted and misapplied the *Sorrentino* case, and thus abused its discretion in holding that those claims failed the transaction test of Practice Book § 10-10. Moreover, although they concede that "a mortgagor is precluded from bringing counterclaims against an assignee of a note and mortgage if such assignee has not expressly assumed the liabilities of the original assignor," they argue, in the alternative, that Judge Aurigemma erred in rendering judgment for the plaintiff on those three counterclaims in light of Judge Domnarski's previous ruling that the allegations of those counterclaims for misrepresentation were legally sufficient to survive the plaintiff's motion to strike. (Internal quotation marks omitted.) Lastly, with

respect to count five of their operative counterclaim, alleging a violation of TILA, the defendants argue that the court improperly concluded that the claim therein pleaded was barred by the statute of limitations.

The plaintiff disagrees, contending that the court properly rendered judgment in its favor on all of the defendants' counterclaims. In support of its position, the plaintiff first distinguishes between those allegations in the counterclaims that are based upon AWL's alleged misdealings with the defendants at or before the time that the note was executed, and those allegations that are based upon the plaintiff's own alleged misdealings with the defendants during the foreclosure mediation several years later. To the extent that such counterclaims are based upon AWL's alleged misdealings with the defendants, the plaintiff argues that the trial court properly held that those claims fail as a matter of law because they are based upon the conduct of a nonparty, for which it could not be held liable without expressly assuming such liability, and, in the alternative, that such claims are barred by applicable statutes of limitations. To the extent that such claims are based upon allegations of the plaintiff's own alleged misdealings with the defendants during the foreclosure mediation, the plaintiff argues, under *Sorrentino*, that the court correctly held that such claims must be dismissed because they have no reasonable nexus to the making, validity or enforcement of the note, and thus they were not properly pleaded as counterclaims in this action.

We agree with the trial court that, to the extent that the defendants' counterclaims are based upon alleged misdealings with the defendants by AWL, a nonparty to this foreclosure action, those counterclaims all fail as a matter of law because there is no evidence of record that the plaintiff expressly assumed the liabilities of the original lender, AWL, when it took the mortgage from AWL by assignment. *Hartford* v. *McKeever*, 314 Conn. 255, 258–59, 101 A.3d 229 (2014); *Bank of America, N.A.* v. *Aubut*, 167 Conn. App. 347, 370, 143 A.3d 638 (2016). The defendants do not claim to the contrary. Instead, in their reply brief, they narrow their challenge to the trial court's rendering of summary judgment for the plaintiff on their counterclaims to those portions of the counterclaims that are based upon the plaintiff's own alleged misdealings with the defendants during the foreclosure mediation. In light of this narrowing of the defendants' challenge, we need not address the court's alternative basis for rendering summary judgment in favor of the plaintiff on those parts of the defendants' counterclaims that were based upon alleged misdealings with them by AWL, more particularly, the plaintiff's challenges to such claims under applicable statutes of limitations.[7] See *Gold* v. *Rowland*, 325 Conn. 146, 150 n.1, 156 A.3d 477 (2017).

Accordingly, the only remaining issue to be decided is whether the court properly held that the allegations of the defendants' counterclaims, to the extent they are based upon the plaintiff's own alleged misdealings with the defendants during the foreclosure mediation, failed the transaction test of Practice Book § 10-10. In so doing, we address this claim solely on its merits, rejecting the defendants' alternative law of the case claim because we conclude such claim is unavailing both in fact and in law.[8] For the following reasons, we conclude that the court properly determined that such counterclaims did not satisfy the transaction test of § 10-10, and thus that they were properly dismissed from this action. We further conclude that, in granting the plaintiff's motion for summary judgment seeking, inter alia, the dismissal of such counterclaims, the court's "judgment . . . in favor of the plaintiff on the defendants' counterclaims" must be construed as a final judgment of dismissal for improper joinder, rather than a final judgment on the merits of the defendants' substantive claims.[9]

As a preliminary matter, we note that our standard of review depends on the nature of the court's ruling, and therefore we must characterize properly the nature of the court's judgment on the defendants' counterclaims before reaching the merits of the defendants' claims on appeal. "We begin with certain basic principles that distinguish the procedural devices of a motion for summary judgment and a motion to strike. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *American Progressive Life & Health Ins. Co. of New York* v. *Better Benefits*, *LLC*, 292 Conn. 111, 119, 971 A.2d 17 (2009). "The rules governing summary judgment are equally applicable to counterclaims. Practice Book § 17-44." *U.S. Bank National Assn.* v. *Sorrentino*, supra, 158 Conn. App. 93.

In contrast, a motion to strike, pursuant to Practice Book § 10-39 (a), "shall be used whenever any party wishes to contest . . . the legal sufficiency of the allegations of any . . . counterclaim[10] . . . to state a claim upon which relief can be granted . . . ." (Foot-

note added.) It is well settled that a court may grant a party's motion to strike a counterclaim, in whole or in part, when such counterclaim is improperly joined with the plaintiff's primary action in contravention of Practice Book § 10-10. See, e.g., *JP Morgan Chase Bank, Trustee* v. *Rodrigues*, 109 Conn. App. 125, 132–33, 952 A.2d 56 (2008) (Affirming motion to strike defendants' counterclaim for emotional distress because its allegations "related to the conduct of the plaintiff that occurred after the execution of the mortgage note . . . . The disparity between the subject matter of the plaintiff's [foreclosure action] and that of the defendants' counterclaim warranted the . . . conclusion that the counterclaim did not arise from the same transaction."); see also *South Windsor Cemetery Assn., Inc.* v. *Lindquist*, 114 Conn. App. 540, 545–46, 970 A.2d 760, cert. denied, 293 Conn. 932, 981 A.2d 1076 (2009). Pursuant to Practice Book § 10-10, "any defendant may file counterclaims against any plaintiff and cross claims against any codefendant *provided that each such counterclaim and cross claim arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint* . . . ." (Emphasis added.) "[A] proper application of Practice Book § 10-10 in a foreclosure context requires consideration of whether a counterclaim has some reasonable nexus to . . . the making, validity or enforcement of the mortgage and note." *U.S. Bank National Assn.* v. *Sorrentino*, supra, 158 Conn. App. 96.

Although, by their nature, these motions serve different purposes and are governed by different rules of procedure, our case law clearly recognizes that a litigant may use a motion for summary judgment to challenge the legal sufficiency of a party's counterclaims. See, e.g., id., 94–95; see also *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 32 n.17, 699 A.2d 964 (1997); *Southbridge Associates*, LLC v. *Garofalo*, 53 Conn. App. 11, 17–19, 728 A.2d 1114, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999); cf. *Sethi* v. *Yagildere*, 136 Conn. App. 767, 770 n.6, 47 A.3d 892, cert. denied, 307 Conn. 905, 53 A.3d 220 (2012). Accordingly, we have recognized that where "both the substance of the motion [for summary judgment] and the trial court's ruling on the motion demonstrate that it is more accurately described as a motion to strike . . . we shall address [the] motion for summary judgment as if it were a properly presented motion to strike."[11] (Internal quotation marks omitted.) *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 351–52, 63 A.3d 940 (2013), quoting *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 293, 596 A.2d 414 (1991).

Here, the plaintiff's motion for summary judgment expressly sought the *dismissal* of the defendants' counterclaims because, inter alia, they were "unrelated to the making, validity or enforcement of the note and mortgage." The plaintiff thus sought dismissal of the defendants' counterclaims, in part, because they were

improperly joined in this action pursuant to Practice Book § 10-10. In their memorandum of law opposing the plaintiff's motion for summary judgment, the defendants argued, inter alia, that there was a genuine issue of material fact as to whether the counterclaims had a reasonable nexus to the making, validity and enforcement of the note and mortgage. Moreover, in rendering judgment in favor of the plaintiff as to the defendants' counterclaims, the court held, inter alia, that those counterclaims were improperly joined in this action because they were predicated on the plaintiff's postdefault conduct during the parties' foreclosure mediation which, under *Sorrentino*, has no reasonable nexus to the making, validity or enforcement of the note and mortgage. Clearly, therefore, both the parties and the court analyzed this portion of the plaintiff's motion for summary judgment as a motion to strike the defendants' counterclaims. We thus elect to treat that portion of the plaintiff's motion for summary judgment, in which it sought dismissal of the defendants' counterclaims for improper joinder under § 10-10, as a properly presented motion to strike. See *Santorso* v. *Bristol Hospital*, supra, 308 Conn. 351–52.

The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. "A motion to strike challenges the legal sufficiency of a pleading . . . and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the [pleading] that has been stricken and we construe the [pleading] in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) Id., 349. As discussed in the preceding paragraphs, however, the court in this case determined that the defendants' counterclaims failed the transaction test pursuant to Practice Book § 10-10. It is well settled that "[t]he transaction test is one of practicality, and the trial court's determination as to whether that test has been met ought not be disturbed except for an abuse of discretion." (Internal quotation marks omitted.) *JP Morgan Chase Bank, Trustee* v. *Rodrigues*, supra, 109 Conn. App. 131–32. Thus, we consider whether the trial court abused its discretion in determining that the defendants' counterclaims failed the transaction test of § 10-10.

In the present case, the defendants argue that the court should not have rendered judgment on their counterclaims because the conduct alleged in support of those counterclaims had a reasonable nexus to the enforcement of the note. More specifically, the defendants claim that "the conduct on the part of the foreclosing party that is complained of by [the defendants] . . . encompasses actions taken by the [plaintiff] regarding possible loan modifications that would [have allowed Jeffrey] Mauro to cure [the] delinquency. This is directly related to the enforcement of the note . . . [because

the] only purpose behind the statements was enforcement of the obligation." We are not persuaded.

In *Sorrentino*, as in this case, a lender sought foreclosure on a parcel of real property after the borrowers defaulted on their loan. *U.S. Bank National Assn.* v. *Sorrentino*, supra, 158 Conn. App. 87. After the lender initiated foreclosure on the property, the lender and borrower entered into a foreclosure mediation. Id., 88. That mediation was unsuccessful, however, and thus the matter was referred back to the court. Id. Thereafter, the borrowers filed both an answer to the complaint and counterclaims against the lender, alleging, inter alia, that: the lender had made assurances that the loan would be modified to avoid foreclosure; the borrowers continually provided documents to assist in the modification process; the lender's promise to modify the loan was a "sham"; and the lender "continued to string [the borrowers] along, either expressly or impliedly representing that [the borrowers] would be eligible for a loan modification." Id., 88–90. The lender subsequently moved for summary judgment as to both the borrowers' liability in the primary foreclosure action and "the propriety of the [borrowers'] counterclaims and special defenses." Id., 90. The trial court granted the lender's motion for summary judgment as to both issues, and the borrowers subsequently appealed that determination. Id.

On appeal in *Sorrentino*, this court held, inter alia: "Our review of the allegations underlying the defendants' mediation counterclaims shows that, even when viewed in a light most favorable to the defendants as the nonmoving party, all the allegations underlying those counterclaims are addressed to the plaintiff's improper conduct during the foreclosure mediation program. That program did not begin until after the execution of the note and mortgage, and after the foreclosure action was commenced, and, thus, does not reasonably relate to the making, validity or enforcement of the note or mortgage. . . . Moreover, the defendants have not posited how the factual allegations underlying the counterclaims have any reasonable nexus to the making, validity or enforcement of the mortgage or note, nor can we discern one. . . . Even if the defendants were provided with an opportunity to replead, we conclude as a matter of law that no permissible corrections could transform the counterclaims so that they comply with the transaction test set forth in Practice Book § 10-10." (Citation omitted.) Id., 97.

After reviewing the pleadings in this case, we conclude that the trial court did not abuse its discretion in determining that the defendants' counterclaims did not have a reasonable nexus to the making, validity and enforcement of the note. Indeed, the trial court correctly determined that "the defendants' counterclaims concerning the plaintiff's conduct during media-

tion/mortgage modification are virtually indistinguishable from those of the defendant[s] in *Sorrentino*. They pertain to the plaintiff's conduct during [the mediation], which occurred years after the execution of the mortgage and the defendants' default." We agree with the court's interpretation of the counterclaims at issue, and thus we conclude that the court did not abuse its discretion in rendering judgment *dismissing those counterclaims* because, in accordance with our decision in *Sorrentino*, they were improperly joined in this action pursuant to the transaction test of Practice Book § 10-10.

The *Sorrentino* court's decision affirming the trial court's rendering of summary judgment in the case before it is not to the contrary. In *Sorrentino*, the court noted, inter alia, that: "In its memorandum in support of summary judgment, the plaintiff argued to the court that . . . the defendants' mediation counterclaims . . . were not part of the same transaction that is the subject of the foreclosure complaint and [thus] were improper. We view those arguments as directly challenging whether the counterclaims were properly joined pursuant to the transaction test set forth in Practice Book § 10-10 and, thus, their legal sufficiency. . . . The defendants never argued that it was improper for the court to consider the plaintiff's insufficiency arguments in adjudicating the motion for summary judgment or that the plaintiff had waived its right to challenge the joinder of the counterclaims by failing to file a motion to strike. Accordingly, none of those issues is before us on appeal." *U.S. Bank National Assn.* v. *Sorrentino*, supra, 158 Conn. App. 96. In light of the fact that the *Sorrentino* court left open the question of whether it was proper "for the court to consider the plaintiff's insufficiency arguments in adjudicating the motion for summary judgment," we conclude that a litigant may use a motion for summary judgment as a means of testing whether a party's counterclaims satisfy the transaction test of § 10-10. We further clarify that, where a court determines that the counterclaims at issue fail the transaction test of § 10-10, the appropriate remedy is not a final judgment on the merits of those counterclaims, but rather a judgment dismissing those counterclaims on the ground of improper joinder with the plaintiff's primary action, without prejudice to the defendants' right to replead that claim, unless it is otherwise barred, in a separate action.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] In its complaint, the plaintiff named Yale-New Haven Hospital, Inc., as a judgment lienholder on the property for an amount of $1500. Yale-New Haven Hospital, Inc., was defaulted in this action for failure to appear. Thus, all future references to the defendants in this decision are exclusively to Jeffrey Mauro and Renee Mauro.

[2] The plaintiff in this action is acting as trustee for the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2006–43CB, Mortgage Pass-

Through Certificates, Series 2006–43CB.

3 In its complaint, both Jeffrey and Renee Mauro were listed as the defendants to the plaintiff's foreclosure claim.

4 Although the foreclosure mediator's report did not list Renee Mauro as a participant in those proceedings, Mauro later submitted an affidavit in opposition to the plaintiff's motion for summary judgment, averring that she had participated in the mediation in an effort to obtain a modification of the note and, further, that she was a party to whom the plaintiff made several misrepresentations as to its willingness and ability to modify the terms of the note prior to initiating this foreclosure action. The plaintiff does not dispute that contention, instead referring consistently to the *defendants* when describing the participants in the foreclosure mediation.

5 The defendants misconstrue the scope of the court's ruling on this issue. In the plaintiff's motion for summary judgment, it argued that "[the] defendants' *preclosing allegations* against [the] plaintiff's predecessor must also fail because all such claims are time barred. The note and mortgage were executed on November 29, 2006. [The] defendants did not assert any [CUTPA or TILA] claims against [the plaintiff] for [AWL's] *preorigination conduct* until January 21, 2014 . . . . [The] defendants' claims concerning the conduct of [AWL] are time barred." (Emphasis added.) In granting the plaintiff's motion for summary judgment on the defendants' counterclaims, the court held: "The plaintiff argues that the defendants' *preclosing* allegations must also fail because they are time barred. The court agrees. . . . The defendants did not [assert] any claims against the plaintiff or the plaintiff's predecessor concerning *preorigination conduct* until January 21, 2014, over seven years after the date of any alleged misrepresentation. Whether framed as a [violation] of [CUTPA] . . . negligent or reckless misrepresentation, fraud or a violation of [TILA], the violations are time barred. . . . The counterclaims which pertain to the plaintiff's conduct that allegedly occurred during the postdefault mediation process cannot defeat a foreclosure action under [*U.S. Bank National Assn.* v. *Sorrentino*, 158 Conn. App. 84, 118 A.3d 607, cert. denied, 319 Conn. 951, 125 A.3d 530 (2015)]." (Emphasis added.) Accordingly, the court's statute of limitations analysis was confined to those portions of the defendants' counterclaims concerning AWL's alleged misconduct at or before the execution of the note; insofar as the counterclaims were based on the plaintiff's postdefault conduct, the court ruled only that those counterclaims were not properly joined in this action pursuant to Practice Book § 10-10.

6 On March 9, 2016, after the court had granted the plaintiff's motion for summary judgment on the issue of the defendants' liability, but before the granting of its subsequent motion for strict foreclosure, the defendants filed their original appeal in this matter. Thereafter, on April 6, 2016, the court granted the plaintiff's motion to dismiss that portion of the defendants' appeal which challenged the court's ruling as to the defendants' liability for foreclosure for lack of subject matter jurisdiction due to lack of a final judgment. After the court granted the plaintiff's motion for strict foreclosure, the defendants filed an amended appeal in this matter.

7 As discussed in the preceding paragraphs, the court's statute of limitations analysis was limited only to the defendants' allegations concerning AWL's conduct at or before the execution of the note at issue. See footnote 5 of this opinion. To the extent that the defendants' TILA claim is predicated on the plaintiff's alleged misconduct during the foreclosure mediation, the court ruled only that such allegations failed the transaction test of Practice Book § 10-10. Therefore, we decline to address the merits of this claim.

8 In essence, the defendants argue that, pursuant to the law of the case doctrine, Judge Aurigemma should have adhered to Judge Domnarski's ruling on the plaintiff's motion to strike their counterclaims for misrepresentation and declined to rule on whether to dismiss portions of the counterclaims that were predicated on AWL's alleged misconduct. We are unpersuaded.

"The law of the case doctrine provides that [w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . . A judge [however] is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision." (Citation omitted; internal quotation marks omitted.) *Henderson* v. *Lagoudis*, 148 Conn. App. 330, 338–39, 85 A.3d 53 (2014); see also *Breen* v. *Phelps*, 186

Conn. 86, 99, 439 A.2d 1066 (1982) ("The law of the case is not written in stone but is a flexible principle of many facets . . . . In essence it expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power." [Citation omitted.]).

We find no merit to the defendants' argument that the law of the case doctrine applies in this matter. First, the defendants provide no support for their proposition that, in ruling on a motion for summary judgment, a court is bound by another judge's ruling on a party's motion to strike. Second, even if the law of the case doctrine precluded such reconsideration—which it does not—Judge Domnarski expressly noted that the plaintiff, as assignee of the note, was not liable for the alleged misconduct of the original lender, AWL. The defendants concede this very point in their reply brief to this court. Third, Judge Domnarski made no ruling as to whether these counterclaims were properly joined pursuant to the transaction test of Practice Book § 10-10. Thus, even if we were to apply the law of the case doctrine with such weight and rigidity as the defendants propose, we would still find no basis for concluding either that Judge Domnarski made a prior inconsistent ruling on this issue, or that Judge Aurigemma was precluded from considering, on a motion for summary judgment, whether, as a matter of law, the plaintiff could be held liable for misrepresentations made by its predecessor in interest to the note and mortgage.

[9] Insofar as the plaintiff requested that these counterclaims be dismissed with prejudice, we acknowledge that the court's ruling precluded the defendants from repleading their counterclaims in the present action. We do not, however, interpret the court's judgment as precluding the defendants from pleading their counterclaims in a separate action.

[10] "[A] counterclaim is a cause of action existing in favor of the defendant against the plaintiff and on which the defendant might have secured affirmative relief had he sued the plaintiff in a separate action." (Internal quotation marks omitted.) *JP Morgan Chase Bank, Trustee* v. *Rodrigues*, 109 Conn. App. 125, 131, 952 A.2d 56 (2008).

[11] Our courts have also recognized, however, that "[t]here is a substantial difference between [the effects of] a motion for summary judgment and a motion to strike. The granting of a defendant's motion for summary judgment puts the plaintiff out of court . . . . The granting of a motion to strike allows the plaintiff to replead his or her case." (Citation omitted.) *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 38 n.3, 727 A.2d 204 (1999) (*Berdon, J.*, concurring and dissenting).

––––––––––––––––––––––––