******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

JAMES T. COSTELLO ET AL. *v.* GOLDSTEIN AND
PECK, P.C., ET AL.
(AC 40465)

DiPentima C. J., and Lavine and Beach, Js.

*Syllabus*

The plaintiffs, C and S, sought to recover damages from the defendant law
firm and two of its attorneys for, inter alia, legal malpractice in connec-
tion with their representation of the plaintiffs in two prior actions. S
previously had retained the defendants to represent her when her former
attorney brought an action against her to collect legal fees, and C pre-
viously had retained the defendants to represent him in an unrelated
dispute concerning his dealings with a condominium association. C and
S commenced the present legal malpractice action and filed a single
complaint against the defendants alleging claims related to the two
distinct matters. The trial court granted the defendants' motion to strike
the complaint for improper joinder and rendered judgment in favor of
the defendants, from which the plaintiffs appealed to this court. *Held*
that the trial court properly granted the motion to strike for improper
joinder, as the plaintiffs' action concerned two separate and distinct
transactions that were independent of each other; although the two
prior matters alleged in the complaint shared common defendants and
background information regarding the defendants and their motivations,
the question of whether the defendants committed legal malpractice
involved the defendants' conduct regarding the individual transactions
and separate evidence was required for each transaction, each plaintiff
had a separate contract with the defendants for their representation,
as well as a separate and distinct legal claim, the plaintiffs were neither
necessary nor indispensable parties in the other's case, as each case
could be fully and fairly resolved without the other being a party, and
the doctrines of collateral estoppel and res judicata would not bar
subsequent litigation by one of the plaintiffs once removed from the
present case; moreover, the trial court did not err in denying the plain-
tiffs' motion for costs arising out of a prior appeal they had brought in
which they prevailed in the Supreme Court, as the relevant statute (§ 52-
243) authorizes the award of litigation costs only if there had been a
verdict in the plaintiffs' favor in the trial court.

Argued September 17, 2018–officially released January 29, 2019

*Procedural History*

Action to recover damages for, inter alia, legal mal-
practice, and for other relief, brought to the Superior
Court in the judicial district of Fairfield, where the
court, *Sommer, J.*, granted the defendants' motion to
dismiss and rendered judgment thereon, from which
the plaintiffs appealed to this court, which affirmed the
trial court's judgment; thereafter, the plaintiffs, on the
granting of certification, appealed to the Supreme
Court, which reversed the judgment of this court and
remanded the case to this court with direction to
remand the case to the trial court with direction to deny
the defendants' motion to dismiss; subsequently, the
court, *Kamp, J.*, denied in part the plaintiffs' motion
for costs and granted the defendants' motion to strike
the second amended complaint; thereafter, the court,
*Kamp, J.*, granted the defendants' motion for judgment
and rendered judgment in favor of the defendants, from
which the plaintiffs appealed to this court. *Affirmed*.

*James T. Costello*, self-represented, with whom, on the brief, was *Dorothy Smulley Costello*, self-represented, the appellants (plaintiffs).

*Nadine M. Pare*, with whom, on the brief, was *Carmine Annunziata*, for the appellees (defendants).

*Opinion*

BEACH, J. The plaintiffs, James T. Costello and Dorothy Smulley Costello,[1] appeal from the judgment of the trial court,[2] rendered subsequent to its granting of the motion to strike the second amended complaint filed by the defendants, Goldstein & Peck, P.C. (law firm), William J. Kupinse, Jr., and Andrew M. McPherson.[3] The plaintiffs claim that the court (1) improperly granted the defendants' motion to strike, (2) failed to consider alternatives to striking the complaint, and (3) improperly denied the plaintiffs' claim for costs pursuant to General Statutes § 52-243. We affirm the judgment of the trial court.

The operative complaint alleged in detail transactions between the plaintiffs and the defendants. The complaint first alleged various facts regarding the law firm. It then described, under separate headings, a transaction regarding Smulley and her former attorney, Juda Epstein (Epstein matter), and a transaction regarding Costello and a condominium association (Lynwood matter).

The plaintiffs alleged the following facts regarding the Epstein matter. Smulley retained the defendants to represent her on June 16, 2008, after Epstein, her former attorney, brought an action against her to collect legal fees. Kupinse filed defenses and a counterclaim, and Epstein filed a motion for summary judgment. Meanwhile, at some point prior to August 6, 2009, Kupinse and Epstein allegedly entered into a business arrangement wherein Epstein would refer new clients to the defendants in exchange for a fee. The plaintiffs alleged that, as a result of this agreement, the defendants set Smulley's matter aside in order to pursue more lucrative matters, thus causing a nine month delay in opposing Epstein's motion for summary judgment. The plaintiffs further alleged that the defendants repeatedly advised her to exchange mutual withdrawals and releases with Epstein and delayed the Epstein matter without Smulley's knowledge or approval by filing continuances and failing to object to Epstein's motion for a continuance until prompted by Smulley to do so. Smulley's special defenses were also amended at least five times, allegedly due to the defendants' errors.

The plaintiffs further alleged that in February, 2010, the defendants charged Smulley for preparation for a trial that did not take place. In April, 2010, Kupinse demanded approximately $15,000 in order to continue his representation, as well as $3,250 for expert witness fees. Although Smulley paid the expert's fees, she later learned that Kupinse failed to forward her payment to the expert, and the expert therefore terminated his engagement. In May, 2010, Kupinse demanded $25,000 in order to continue his representation. Subsequently, Kupinse filed a motion to withdraw as Smulley's coun-

sel, which was granted in June, 2010. Three months after Kupinse withdrew from the Epstein matter, Kupinse attempted to charge Smulley for unauthorized meetings, including meetings with an attorney who was consulted after Kupinse's withdrawal, the expert who withdrew from the Epstein matter, and a client whom Epstein had referred to Kupinse. The plaintiff alleged various conflicts of interest on the part of Kupinse.

The plaintiffs made the following allegations concerning the Lynwood matter. Costello retained the defendants on November 18, 2008, to represent him in a dispute concerning funds associated with the Lynwood Condominium Association (Lynwood), and a receiver was appointed several months later. Costello eventually was appointed temporary receiver, but Kupinse allegedly delayed the appointment by failing to file the appropriate motion for nearly five months. When unit owners challenged Costello's authority to act as substitute receiver and accused him of misappropriating funds, Kupinse allegedly failed to file any response in Costello's defense. After a court hearing in which Costello agreed to provide certain documents to Lynwood's counsel, Costello sent those documents to Kupinse, but Kupinse allegedly failed to forward the documents properly. Additionally, Costello's motion for reimbursement of attorney's fees failed "because Kupinse failed to appear to reaffirm his motion in support thereof." Finally, at the time of his withdrawal from the Lynwood matter, Kupinse sent Costello a bill for several hundred dollars for time spent with Lynwood's counsel, though Kupinse provided no explanation for the charges. Costello further alleged various incidents in which Kupinse failed to act diligently.

The plaintiffs' operative complaint also alleged the following facts concerning their relationship and shared experiences with the defendants. The plaintiffs, who are married to each other, each participated fully in the other's matter and shared the payment of legal fees charged by the defendants. The defendants failed to develop a strategic plan for either plaintiff. Instead, they filed claims that were easily defeated and that they later withdrew. The conflict in the Epstein matter "spilled over" into the defendants' representation of Costello in the Lynwood matter, and the behavior of the defendants was similar in both cases. The operative complaint alleged legal malpractice against Kupinse and McPherson, and as to both sets of transactions they alleged unfair trade practices in violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes 42-110a et seq., against the law firm. The defendants moved to strike the complaint for improper joinder.

The trial court held that, although both plaintiffs relied broadly on a theory of inadequate legal representation, the plaintiffs' "reasons for their respective dissatisfaction, and indeed the nature of the representations,

diverge[d] sharply." The court noted, that "[w]here Smulley's allegations sound alternatively in intentional and neglectful misconduct, Costello appears to allege a more general sort of incompetent representation." The court stated that the plaintiffs' pleadings did not demonstrate a common scheme sufficient to satisfy the requirement that each plaintiff's right of relief arise out of the same transaction or series of transactions in order to qualify for permissive joinder. Accordingly, the court granted the defendants' motion to strike. The plaintiffs claim that the court erred in granting the motion to strike.

The plaintiffs also claim that the court erred in denying costs arising from a prior appeal by the plaintiffs pursuant to § 52-243. The basis for the prior appeal is as follows. The trial court previously had granted the defendants' motion to dismiss the complaint on the ground that the writ of summons had not been accompanied by either a third party recognizance[4] or certification of the plaintiffs' financial responsibility, as required by the Practice Book and by statute. Following summary affirmance by this court, our Supreme Court reversed and remanded for further proceedings. See *Costello* v. *Goldstein & Peck, P.C.*, 321 Conn. 244, 247–48, 259, 137 A.3d 748 (2016).

Following the remand, the plaintiffs filed a motion for litigation costs arising from the appeal pursuant to General Statutes §§ 52-243[5] and 52-257 (d)[6], seeking $623.63. The court denied costs sought pursuant to § 52-243, because there had not been a verdict, but granted costs under § 52-257 (d) in the amount of $100. This appeal followed. The plaintiffs assert that the court erred in finding that joinder was improper and that the court improperly denied costs under § 52-243.

"We begin our analysis by setting forth the applicable standard of review. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Internal quotation marks omitted.) *McCart* v. *Shelton*, 81 Conn. App. 58, 60, 837 A.2d 872 (2004).

"All persons may be joined in one action as plaintiffs in whom any right of relief *in respect to or arising out of the same transaction* or series of transactions is alleged to exist either jointly or severally when, if such persons brought separate actions, any common question of law or fact would arise . . . ." (Emphasis added.) Practice Book § 9-4. "A motion to strike shall

be used whenever any party wishes to contest . . . the joining of two or more causes of action which cannot properly be united in one complaint, whether the same be stated in one or more counts . . . ." Practice Book § 10-39 (a) (4).

The plaintiffs argue that the court improperly granted the defendants' motion to strike the plaintiffs' second amended complaint on the basis of improper joinder. We disagree, because the plaintiffs' underlying action concerns two separate and distinct transactions: the Epstein matter and the Lynwood matter. As recited previously, the Epstein matter was litigation between Smulley and her prior attorney, which arose initially from a fee dispute, whereas the Lynwood matter involved Costello's relationship and dealings with a condominium association.

It is useful to compare the complaint in this case with that in *McCart*, in which seventy-three plaintiffs claimed that their assessments for the installation of sewers had been excessive. *McCart* v. *Shelton*, supra, 81 Conn. App. 59–60. The complaint alleged that the defendant city and its sewer authority had assessed each property for the benefit conferred by the construction of a sewer and used a common method of valuation; there was, thus, a set of common facts. Id., 60. The "real question" of the complaint, however, was "whether, in the case of each individual plaintiff, the method of assessment was correctly applied under the particular facts to reach a proper result." Id., 62. This court held that the individual differences in the properties were paramount. When the matters were tried, it would be necessary for each plaintiff to provide "individual evidence." Id.

As in *McCart*, the complaint in the present case alleges discrete transactions that are not dependent on the other. The transactions share common defendants, and the background information regarding the defendants and their alleged motivations are relevant to both transactions. But, as in *McCart*, the "real question" involves the conduct regarding each transaction, and separate evidence is required for each. The overlap is, as in *McCart*, tangential and, therefore, joinder is not proper.

The inability to meet the same transaction test is dispositive of the plaintiffs' claims. We nonetheless briefly address the plaintiffs' objections to the application of the rule in this case. The plaintiffs claim that they are "necessary parties in privity" and therefore joinder is required. We disagree. "Necessary parties . . . have been described as [p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. . . . [B]ut if their interests are

separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties." (Internal quotation marks omitted.) *Sturman* v. *Socha*, 191 Conn. 1, 6–7, 463 A.2d 527 (1983). The plaintiffs are neither necessary nor indispensable parties[7] in the other's case. Each plaintiff's case can be fully and fairly resolved without the other being a party. Each of the plaintiffs had a separate and distinct legal claim and the result of one would not necessarily govern the result of the other.

Next, the plaintiffs assert that there was only a single contract applicable to both plaintiffs during the time period in question and therefore joinder was proper. The plaintiffs claim that because the defendants allegedly agreed to represent Costello under the same "terms and conditions" that governed their representation of Smulley, there was only one contract. The fact that two contracts may contain the same terms and conditions, however, does not necessarily mean that the two contracts are a single contract. The pleadings allege two distinct agreements, one for the representation of Smulley and the other, months later, for the representation of Costello.

The plaintiffs next assert that if, as the trial court instructed, one plaintiff were to remain alone in this action and the other were to bring a separate action, the doctrines of res judicata and collateral estoppel would bar subsequent litigation. We disagree. "The doctrine of res judicata holds that an existing final judgment rendered [on] the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Wellswood Columbia, LLC* v. *Hebron*, 327 Conn. 53, 65, 171 A.3d 409 (2017). A motion to strike for improper joinder is not a determination on the merits and therefore res judicata does not apply. See, e.g., *Bank of New York Mellon* v. *Mauro*, 177 Conn. App. 295, 320, 172 A.3d 303 (2017) (noting in context of counterclaims that "where a court determines that the counterclaims at issue fail the transaction test of [Practice Book] § 10-10, the appropriate remedy is not a final judgment on the merits of those counterclaims, but rather a judgment dismissing those counterclaims on the ground of improper joinder with the plaintiff's primary action, without prejudice to the defendants' right to replead that claim, unless it is otherwise barred, in a separate action"); see also *Inovejas* v. *Dufault*, Superior Court, judicial district of New Britain, Docket No. CV-99-0496171-S (March 13, 2000) (26 Conn. L. Rptr. 395) ("The court's granting of the motion to strike . . . against [the plaintiffs] was . . . not upon the basis that the plaintiff had failed to state a legally sufficient cause

of action, which necessarily tests the legal merits of the [plaintiffs'] claim[s], but upon the strictly procedural basis that the plaintiff had improperly joined two insufficiently related causes of action in one complaint, which in no way tested the merits of the [plaintiffs'] claim[s]. Accordingly res judicata does not apply.").

Similarly, collateral estoppel would not bar subsequent litigation in the present circumstances. "[C]ollateral estoppel . . . prohibits the relitigation of an issue when that issue has been actually litigated and necessarily determined in a prior action between the same parties or those in privity with them upon a different claim." *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 600, 922 A.2d 1073 (2007). An issue is actually litigated when "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined . . . . An issue may be submitted and determined on a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judgment . . . a motion for a directed verdict, or their equivalents, as well as on a judgment entered on a verdict." 1 Restatement (Second), Judgments § 27, comment (d), p. 255 (1982). The court's ruling that is the subject of this appeal did not determine any substantive issue and, thus, would not serve to bar subsequent determination.[8]

The plaintiffs also assert that the trial court "failed to consider alternatives to strike on misjoinder." To support this argument, plaintiffs cite Practice Book § 15-2[9] and claim that the trial court should have bifurcated their trial instead of granting the motion to strike. This argument is without merit. "The exclusive remedy for misjoinder of parties is by motion to strike." *Zanoni* v. *Hudon*, 42 Conn. App. 70, 73, 678 A.2d 12 (1996); see also Practice Book § 11-3. Upon finding that joinder was improper, the trial court had no alternatives to consider.[10]

Finally, the plaintiffs contend that the trial court erred in denying their motion for costs, pursuant to § 52-243, arising from their previous appeal in this action, on which they prevailed in our Supreme Court. The plaintiffs claimed that they incurred substantial costs in the course of their ultimately successful appeal from the trial court's prior dismissal of the action on the ground of improper recognizance. The court denied the motion for costs pursuant to § 52-243 because there had "been no verdict on any issue joined in favor of the plaintiff," as required for the recovery of costs pursuant to that statute. Section 52-243 provides: "If a verdict is found on any issue joined in an action in favor of the plaintiff, costs shall be allowed to him, though on some other issue the defendant should be entitled to judgment, unless the court which tried the issue is of the opinion that the defendant had probable cause to plead the matter found against him."

The plaintiffs argue that the language of § 52-243 does not define the term "verdict," and that a dictionary definition broadly equating "verdict" with any decision or result applies. We disagree. The statutory language clearly establishes that the statute in issue provides for costs only after verdicts in the trial court. Although the plaintiffs' broad definition may be correct in common parlance, a "verdict" in the legal context is defined as "[a] jury's finding or decision on the factual issues of a case [or] . . . in a nonjury trial, a judge's resolution of the issues of a case." Black's Law Dictionary (7th Ed. 1999); see also *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 301, 306, 472 A.2d 316 (1984) (citing § 52-243 to show that legislature intended "verdict" to include judgments rendered after court trials). Further, § 52-243 on its face addresses the issue of whether the plaintiff may recover costs after prevailing on some but not all of the issues raised.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Hereafter, Costello and Smulley Costello will be referred to collectively as the plaintiffs, and individually by name, where appropriate. Smulley Costello will be referred to as Smulley.

[2] After the court granted the motion to strike, the plaintiffs did not plead over. The defendants then filed a motion for judgment, which the court granted.

[3] Hereafter, Kupinse, McPherson, and the law firm will be referred to collectively as the defendants, and individually by name, where appropriate. Kupinse and McPherson were attorneys employed by the law firm.

[4] "A recognizance is an obligation acknowledged before some court for a certain sum, with condition that the plaintiff shall prosecute a suit pending in court, or for the prosecution of an appeal. . . . . A recognizance is in effect a bond as to its obligation." (Internal quotation marks omitted.) *Costello* v. *Goldstein & Peck, P.C.*, 321 Conn. 244, 247 n.1, 137 A.3d 748 (2016), citing *Palmer* v. *Des Reis*, 136 Conn. 232, 233, 70 A.2d 141 (1949).

[5] General Statute § 52-243 provides: "If a verdict is found on any issue joined in an action in favor of the plaintiff, costs shall be allowed to him, though on some other issue the defendant should be entitled to judgment, unless the court which tried the issue is of the opinion that the defendant had probable cause to plead the matter found against him."

[6] General Statutes § 52-257 (d) provides: "The following sums may be allowed to the prevailing party in causes on appeal, in the discretion of the court: (1) For all proceedings, one hundred dollars; (2) for expenses actually incurred in printing or photoduplicating copies of briefs, a sum not exceeding two hundred dollars; and (3) to the plaintiff in error, plaintiff in a cause reserved, or appellant, as the case may be, the record fee, provided judgment shall be rendered in his favor. Such costs in the Superior Court in appealed causes and in the Supreme Court or Appellate Court shall be in the discretion of the court on reservation of a cause for advice, or when a new trial is granted."

[7] We note that there is a somewhat archaic distinction between "necessary" and "indispensable" parties; see *Sturman* v. *Socha*, supra, 191 Conn. 6–7; but the distinction does not make a difference in the present case.

[8] Similarly, the transactions are separate and distinct, as discussed previously in this opinion, such that neither claim would be barred on the ground of privity. See *Wheeler* v. *Beachcroft, LLC*, 320 Conn. 146, 167, 129 A.3d 677 (2016) ("[p]rivity as used in the context of res judicata or collateral estoppel, does not embrace the relationships between persons or entities, but rather it deals with a person's relationship to the subject matter of the litigation" [internal quotation marks omitted]).

[9] Practice Book § 15-2 provides: "The judicial authority may, upon motion, for good cause shown, order a separate trial between any parties."

[10] The plaintiffs also assert that they were denied due process rights when the trial court granted the motion to strike. The plaintiffs, however, had a

full and fair opportunity to be heard on the matter and, as previously stated, were instructed that both plaintiffs were able to continue their actions separately.

_____